FILED

FEB 25 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                ) BAP No.   SC-14-1132-KiKuJu
                                       )
STEVEN PATRICK SCHLEGEL;               ) Bk. No.   08-13539-PB13
JOANNE MARIE SCHLEGEL,                 )
                                       )
                Debtors.               )
                                       )
_____       )
                                       )
STEVEN PATRICK SCHLEGEL;               )
JOANNE MARIE SCHLEGEL,                 )
                                       )
                Appellants,            )
                                       )
v.                                     ) **O P I N I O N**
                                       )
THOMAS H. BILLINGSLEA, JR.,            )
Chapter 13 Trustee,                    )
                                       )
                Appellee.              )
_____       )

Submitted Without Oral Argument
On January 22, 2015[1]

Filed - February 25, 2015

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Peter W. Bowie, Bankruptcy Judge, Presiding

Appearances:     Daniel J. Winfree on brief for appellants Steven
                 Patrick Schlegel and Joanne Marie Schlegel; Jenny
                 Judith Hayag on brief for appellee Thomas H.
                 Billingslea, Jr., Chapter 13 Trustee.

Before:  KIRSCHER, KURTZ and JURY, Bankruptcy Judges.

_____

    [1]  On November 25, 2014, the parties filed a joint motion to submit on briefs, which was granted on December 1, 2014.

KIRSCHER, Bankruptcy Judge:

Appellants Steven Patrick Schlegel and Joanne Marie Schlegel ("Schlegels") appeal an order dismissing their chapter 13[2] case for failing to complete plan payments within the applicable five-year commitment period. This appeal raises for the first time whether a confirmed chapter 13 plan may be dismissed for the debtors' failure to pay both the required plan payment and the approved percentage dividend to unsecured nonpriority creditors during the applicable commitment period. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Pre-confirmation events**

The Schlegels, as above median income wage earners, filed a chapter 13 bankruptcy case on December 31, 2008. Their Schedule A identified a fee interest in a residence on Casita Way in San Diego, California ("Residence") with a value of $274,500 and secured claims against it totaling $434,053. Their Schedule D identified a junior lien on the Residence held by CitiMortgage, Inc. ("CitiMortgage") in the amount of $156,348. The claims bar date expired on April 30, 2009. CitiMortgage did not file a proof of claim by the claims bar date.

In their original chapter 13 plan filed on January 15, 2009, Schlegels proposed monthly plan payments of $963 for 60 months and a 24% dividend to unsecured nonpriority creditors. The original plan provided in Paragraph 19:

---

[2]   Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

> VALUATION AND RECLASSIFICATION OF LIENS ON REAL PROPERTY
> The following creditors are anticipated by this plan to be deemed unsecured creditors by operation of 11 USC §§ 506(a) and 1322(b) and Federal Rule of Bankruptcy Procedure § [sic] 3012, and will be subject to motion to that end under Federal Rule of Bankruptcy Procedure § [sic] 9014: [CitiMortgage] Heloc on 3957 Casita Way in approximate amount of $156,500 . . . .

The chapter 13 trustee, Thomas H. Billingslea ("Trustee"), objected to the original plan and moved to dismiss the case, contending that: "Feasibility of plan at 24% dividend requires evaluation whether to-be-stripped creditors file proof of claim." Ultimately, the bankruptcy court denied confirmation of the original plan.

On April 8, 2009, Schlegels filed an amended Motion to Avoid Lien and Reclassify Loan[3] with respect to CitiMortgage's junior lien on the Residence ("Motion to Value"). Schlegels sought to value the Residence at $266,500, which would leave CitiMortgage's junior lien wholly unsecured. After proper service of the Motion to Value, CitiMortgage did not respond.

The bankruptcy court revised its tentative ruling[4] on August 28, 2009, entered its order granting the Motion to Value on October 22, 2009 ("Valuation Order") and valued the Residence at $266,500. The Valuation Order also provided:

> The Court determines that the Second Trust Deed of Citibank (West) . . . is entirely unsecured under 11

---

[3] Schlegels filed an amended motion after the court informed them that the matter needed to be renoticed for hearing, that they were seeking improper relief and that they filed an incomplete declaration with their motion.

[4] The court issued a revised tentative ruling after Schlegels' attorney filed an amended certificate of service establishing proper service of the motion.

-3-

U.S.C. Section 506(a) given the value of the property and the amount of liens senior to Citibank's (West) lien secured thereby, and avoids Citibank's (West) lien under 11 U.S.C. Section 1322(b), contingent on entry of a confirmation order so providing, and completion of Debtor's [sic] Chapter 13 Plan and Debtors' resultant discharge.

On October 12, 2009, after the bankruptcy court orally granted the Motion to Value, but before it entered the Valuation Order, CitiMortgage filed a secured proof of claim for its junior lien in the amount of $155,246.17, which the bankruptcy court rendered unsecured by its Valuation Order, pursuant to § 506(a). Schlegels did not object to CitiMortgage's judicially-determined unsecured claim.

Meanwhile, on July 1, 2009, Schlegels had filed an amended chapter 13 plan in which they proposed monthly plan payments of $812 for 60 months and a 48% dividend to unsecured nonpriority creditors.[5] The amended plan provided the same "Paragraph 19" as did the original plan, wherein Schlegels stated that CitiMortgage would be treated in their plan as an unsecured creditor.

**B. Post-confirmation events**

The bankruptcy court eventually confirmed the Schlegels' amended plan on May 5, 2010 (the "Plan"). The confirmation order drafted by Schlegels' counsel stated that consistent with Paragraph 19 of the Plan dated July 1, 2009, and the Valuation Order entered on October 22, 2009, the wholly unsecured lien of CitiMortgage would be treated and paid as an unsecured claim under the Plan. However, the Plan apparently did not take into

---

[5] Schlegels filed the amended plan after the claims bar date and they calculated the increase in percentage to unsecured creditors based on the claims filed before the bar date.

-4-

consideration CitiMortgage's claim when it promised to pay unsecured creditors a 48% dividend, even though CitiMortgage filed its claim months before Plan confirmation.

On May 14, 2010, nine days after the entry of the confirmation order, Trustee filed a Notice of Claims Filed and Intention to Pay Claims ("Notice of Claims"). The Notice of Claims, which included CitiMortgage's judicially-determined unsecured claim of $155,246.17, showed the aggregate total for all unsecured claims as $219,596. The Notice of Claims also stated: "Pursuant to 11 U.S.C. § 502(a), the claims which have been filed as stated above will be deemed allowed for purposes of distribution and shall be paid unless the debtor or other party in interest files with the court in accordance with Rule 3007, [an] Objection to Claim and Request for Hearing within thirty (30) days of this notice." The record reflects service of the Notice of Claims on both Schlegels and their counsel. No party filed any claim objections.

**1.    Schlegels' motion for hardship discharge**

On December 13, 2013, on the eve of the sixtieth month of the Plan, Schlegels filed a motion for hardship discharge (the "Hardship Motion"). Schlegels contended that several reasons warranted a hardship discharge: (1) Mrs. Schlegel's recent cancer diagnosis and loss of employment; (2) the need of an additional 96 months of payments to satisfy the percentage dividend payout of the Plan; and (3) the impracticality of plan modification, given the lapse of nearly five years in the plan. The bankruptcy court scheduled a Hardship Motion hearing on March 5, 2014.

Trustee objected to the Hardship Motion, contending that

-5-

Schlegels had failed to establish the necessary elements to support a hardship discharge for the following reasons: (1) at confirmation, the Plan term approximated 158 months, given the 48% dividend, CitiMortgage's allowed unsecured claim and Schlegels' failure to object to CitiMortgage's claim; (2) Schlegels paid a total of $48,391, approximately 58.5 months of the required 60 Plan payments; and (3) the approximate remaining payoff of $77,780 required an additional 96 months to complete. Under the Plan terms, the Schlegels had provided a 10.8% to 15.42% dividend to unsecured nonpriority creditors.

**2. Trustee's motion to dismiss**

On January 6, 2014, Trustee moved to dismiss the Schlegels' chapter 13 case for failing to complete plan payments within five years from commencement of the case ("Motion to Dismiss"). The attached notice provided:

> You are further notified that IF YOU FAIL TO REQUEST AND SERVE NOTICE OF HEARING within [the] 28 day period provided by this notice, the Trustee will present [an] order dismissing this case to the Court for entry without any hearing or further notice to you.

The Schlegels failed to file any opposition to the Motion to Dismiss by the deadline of February 6, 2014.

On February 20, 2014, Trustee filed a Statement of Case Status re Non-Contested Motion to Dismiss and Opposition to Debtors' Motion for Hardship Discharge. Trustee maintained that Schlegels: failed to timely oppose the Motion to Dismiss; failed to make all Plan payments; failed to pay off the remaining balance of $76,960; and failed to pay the percentage dividend, all within the Plan term. Accordingly, he requested the court to enter a non-contested dismissal order. Trustee noted that his periodic

-6-

and annual reports sent to Schlegels throughout the case from 2009 to 2013 should have alerted them to the percentage dividend deficiency.

On February 22, 2014, Schlegels' counsel filed a responsive Declaration re Status, asserting that filing an opposition to the Motion to Dismiss would have been redundant considering the pending Hardship Motion. Nonetheless, he asserted that the Schlegels' inability to perform the Plan requirements arose from the allowance of CitiMorgtage's claim filed after the claims bar date.

**3. The bankruptcy court's ruling on both motions**

The bankruptcy court held a hearing on the Hardship Motion on March 5, 2014. Although Schlegels failed to file any written opposition or to request/obtain a hearing date on the Motion to Dismiss, the transcript of the hearing confirms that the court also considered the parties' arguments on the Motion to Dismiss.

At the hearing, Schlegels' counsel did not dispute the court's statements that they knew by at least May 2010, based on Trustee's Notice of Claims, that with the monthly payments and the 48% dividend required by their Plan, 96 additional monthly payments would be required to complete their Plan given Citimortgage's unsecured claim. Thus, Schlegels had known for nearly four years that they could not fully perform under the terms of the confirmed Plan. Hr'g Tr. (March 5, 2014) 3:13-3:24. Schlegels' counsel stated that they were hoping to secure a financing arrangement during the applicable commitment period to complete all financial obligations of their Plan, but Mrs. Schlegel's health, her loss of employment and the foreclosure of

-7-

their rental property prevented that from happening, hence their need for a hardship discharge. Id. at 3:25-4:9, 4:20-5:1, 5:6-22. In response, the court stated that Schlegels should have filed a timely plan modification, reducing the percentage dividend based upon their circumstances, and should not have waited so late in the Plan's applicable commitment period to request a hardship discharge. Id. at 5:23-6:2, 6:20-7:5. Schlegels' counsel made no argument as to the allowance of CitiMortgage's proof of claim and the court made no observations on the matter. After hearing further argument from the parties, the court orally denied the Hardship Motion. Id. at 11:13-12:3. The bankruptcy court did not make an oral ruling on the Motion to Dismiss.

The bankruptcy court entered a form order granting the Motion to Dismiss ("Dismissal Order") on March 7, 2014, for Schlegels' "[f]ailure to fully complete plan payments on or before five (5) years from the commencement of this case." It entered a separate order denying the Hardship Motion on March 5, 2014, but Schlegels did not appeal that order. Schlegels timely appealed the Dismissal Order on March 21, 2014.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion in dismissing Schlegels' bankruptcy case for failure to complete plan payments within five years?

## IV. STANDARDS OF REVIEW

A court's interpretation and application of a local rule is

reviewed for an abuse of discretion. United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2011). We review the bankruptcy court's dismissal of a chapter 13 bankruptcy case under any of the enumerated paragraphs of § 1307(c) for abuse of discretion. Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**The bankruptcy court did not abuse its discretion when it dismissed the Schlegels' chapter 13 bankruptcy case for failing to complete their plan payments within the five-year period.**

Before we turn to the merits of the bankruptcy court's decision to dismiss Schlegels' chapter 13 case, we address an argument they raise regarding whether the court properly deemed the Motion to Dismiss as "uncontested."

The caption of the Dismissal Order, which appears to be a form order submitted by Trustee, reads: "Order on Noncontested Motion Dismissing Chapter 13 Case." A motion to dismiss a bankruptcy case under § 1307(c) is a contested matter subject to Rule 9014(a).[6] Rule 1017(f)(1). Schlegels contend that Rule 9014(a) did not require them to file a response to the Motion to

---

[6] Rule 9014(a) provides:

In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

-9-

Dismiss. This contention is correct, but they also concede that Local Rule 9014-4(f) for the Bankruptcy Court for the Southern District of California directs that failure to file a timely opposition to a contested motion allows the court to deem the parties' silence as consent to granting the motion. Schlegels contend the bankruptcy court erred by concluding they failed to contest the Motion to Dismiss when they otherwise actively sought a hardship discharge.

Courts have broad discretion to interpret their local rules. Only in rare cases will an appellate court question the exercise of discretion in connection with the application of the local rules. Qualls v. Blue Cross, 22 F.3d 839, 842 (9th Cir. 1994); Katz v. Pike (In re Pike), 243 B.R. 66, 69 (9th Cir. BAP 1999)("The bankruptcy court has broad discretion to apply its local rules."). Whether or not the bankruptcy court considered the Motion to Dismiss to be "uncontested," the Schlegels fail to state what difference it would make had the bankruptcy court considered the matter "contested." It appears the court considered their oral arguments against dismissal to some extent at the Hardship Motion hearing. Even if not, the court clearly had discretion to deem Schlegels' lack of a written opposition as consent to granting the Motion to Dismiss, as long as it was meritorious. We agree with the bankruptcy court's conclusion that Schlegels failed to contest the Motion to Dismiss.

**A.  Dismissal under 1307(c)**

Section 1307(c) allows the bankruptcy court to dismiss a case for "cause," including a material default with respect to a term of a confirmed plan. See § 1307(c)(6). The decision to dismiss a

chapter 13 case under § 1307(c) is a discretionary decision of the trial court. <u>Sievers v. Green (In re Sievers)</u>, 64 B.R. 530, 530 (9th Cir. BAP 1986).

The bankruptcy court dismissed the Schlegels' case under § 1307(c)(6) for failing to complete their plan payments within five years from the commencement of their case. Although Schlegels had made their $812 monthly plan payments, they had failed to pay their unsecured nonpriority creditors the promised 48% dividend. Schlegels contend that the bankruptcy court erred in dismissing their case because they completed all of their payments under the Plan as required by § 1328(a) even if they failed to pay the required percentage dividend. Neither the Ninth Circuit nor this Panel has addressed this precise issue. However, persuasive authority supports the bankruptcy court's decision to dismiss for this reason.

**B. Analysis**

**1. Authority supporting dismissal of the case**

In <u>Roberts v. Boyajian (In re Roberts)</u>, 279 B.R. 396, 397-98 (1st Cir. BAP 2000), <u>aff'd</u>, 279 F.3d 91 (1st Cir. 2002), a case with nearly identical facts, debtors' confirmed chapter 13 plan promised to pay monthly payments of $474, to pay filed tax claims and to pay unsecured creditors a 10% dividend. Three years later, the IRS filed a proof of claim for a postpetition trust fund tax. No person filed objections to the IRS's claim and the trustee began making payments on account of the IRS claim. Six years after confirmation, the trustee moved to dismiss on the basis that debtors' plan payments failed to pay both the IRS claim and the 10% dividend to unsecured creditors. In response, debtors filed a

-11-

motion for discharge under § 1328(a)[7] or for a hardship discharge under § 1328(b). The bankruptcy court dismissed the case and denied debtors' motion.

The First Circuit BAP affirmed. The Panel rejected debtors' argument that they had satisfied their obligations under the plan simply because they paid the monthly dollar amount stated in the plan for 60 months. This argument ignored their failure to comply with the other plan terms — to pay any postpetition tax claims and to pay unsecured creditors a dividend of 10%. Id. at 399. The Panel held that debtors' failure to pay the IRS claim or their unsecured creditors as promised in their confirmed plan constituted a material default warranting dismissal under § 1307(c)(6). Id. at 400. The Panel considered debtors' failure to object to the IRS's claim or to seek modification of their plan under § 1329 important in its decision. Id.

In another similar case, In re Rivera, 177 B.R. 332 (Bankr. C.D. Cal. 1995), the debtors' plan, confirmed prior to the claims bar date, provided for 36 monthly payments of $2,300 and a dividend of 65% to unsecured creditors. Id. at 333. Had the allowed claims been limited to those scheduled by the debtors, the $2,300 monthly payments would have been sufficient to provide the proposed 65% return to creditors within three years. However, the amounts for filed claims substantially exceeded debtors' scheduled debts and debtors had not filed any objections to the claims. As

---

[7] Section 1328(a) provides in part: "Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title . . . ."

-12-

a result, the plan failed to pay the 65% dividend by about $15,000. Id. The trustee moved to dismiss debtors' case under § 1307(c)(6) for a material default in the plan. Debtors responded with a motion for discharge under § 1328(a).

The issue before the Rivera court involved which plan provision takes precedence — the percentage dividend to unsecured creditors or the monthly plan payments. Persuaded by the reasoning of In re Carr, 159 B.R. 538 (D. Neb. 1993) and In re Phelps, 149 B.R. 534 (Bankr. N.D. Ill. 1993), the Rivera court found that debtors' payment of less than the percentage dividend required in the plan precluded a discharge. Id. at 334-335. By failing to pay their unsecured creditors the promised 65% dividend, the debtors had not completed their payments under the plan within the meaning of § 1328(a). Id. at 335.

In In re Hill, 374 B.R. 745 (Bankr. S.D. Cal. 2007), the bankruptcy court considered two separate cases in one decision involving a husband and wife in one and an individual woman in the other. In each case, the debtors or debtor had a confirmed plan providing for monthly payments and a 100% dividend plus 10% interest to unsecured creditors. Id. at 746-48. In both cases, total claims ended up being more than debtors had accounted for, and the debtors failed to seek amendments to their plans in order to complete them within 60 months, despite the trustee's notices that their plan payments would necessarily exceed the five-year term. In one of the cases, the debtor needed an additional 33 months to complete the plan payments; in the other, debtors needed an additional 53 months of plan payments. The trustee moved to dismiss both cases for failure to pay the plan in full within five

-13-

years.

The Hill court acknowledged that failing to complete plan payments within the applicable 36 or 60-month period could constitute cause for dismissal under § 1307(c)(6). Id. at 748-49. However, it opined that dismissal was not absolute, despite the mandate in § 1322 that a plan must not provide for payments over a period that exceeds five years. Section 1322 involved confirmation, not dismissal. Id. at 748. While the court determined that the debtors materially breached a term of their plans within the meaning of § 1307(c)(6) by needing an additional 33 or 53 months to complete the plans — i.e., they had failed to pay their unsecured creditors the promised dividend of 100% plus 10% interest — it decided not to dismiss the debtors' cases due to their unique circumstances. The debtors or debtor in each case had been consistently performing over the past 60 months, no real property arrearages continued to drag out and no unsecured creditor had complained about not receiving 100% plus 10% interest over the past five years. Id. at 749-50. See also In re Grant, 428 B.R. 504, 506-508 (Bankr. N.D. Ill. 2010) (holding that failing to complete plan payments within five years, and where the plan cannot be modified to make completion feasible, constitutes a material default for purposes of § 1307(c)(6); the court also interpreted § 1322(d) as limiting a plan to a maximum of five years and concluded that allowing a plan to continue an additional twelve to eighteen months beyond that would ignore § 1322(d) and Congress' clear intent).

We agree with the above cases to the extent they hold that, even though a chapter 13 debtor has completed his or her monthly

-14-

plan payments, failure to pay unsecured creditors the promised percentage dividend constitutes a material default with respect to a term of a confirmed plan. § 1307(c)(6). Because the Schlegels did not seek to continue their Plan payments beyond the 60 months but instead sought a hardship discharge, we do not render any opinion as to whether § 1322(d) limits a bankruptcy court's ability to allow a debtor to continue making plan payments beyond the applicable commitment period.

Schlegels argue that under Fridley v. Forsythe (In re Fridley), 380 B.R. 538 (9th Cir. BAP 2007), a plan is "complete" and debtors are entitled to a discharge when they either pay all claims 100% or make 60 months of payments. We disagree with their position. In Fridley, debtors sought an early discharge after making a lump-sum payment in month 14 of their 36-month plan, which satisfied the plan's dollar amount. 308 B.R. at 540. The Panel held that since debtors' plan did not provide for 100% payment to unsecured creditors, they had to commit themselves to the temporal requirement of 36 months and their prepayment did not "complete" their plan for purposes of §§ 1328(a) or 1329. Id. at 545. To obtain an early discharge without paying allowed unsecured claims in full, debtors had to follow the § 1329 modification procedure. Id. at 544.

Fridley did not hold, or even infer, that simply making plan payments for the applicable commitment period without also providing unsecured creditors with the promised percentage dividend entitles a debtor to discharge. Further, that case involved the early completion of plan payments and ultimately discharge, not debtors' failure to complete plan payments within

-15-

the applicable commitment period and dismissal under § 1307(c). At any rate, Schlegels are no longer even able to modify the Plan as they have made all monthly payments.  See § 1329(a).[8]

**2.  It was proper to allow CitiMortgage's unsecured claim**

Schlegels also dispute whether CitiMortgage's "late-filed" claim should have been allowed and paid by Trustee, which claim ultimately caused their Plan to implode and not pay unsecured nonpriority creditors a 48% dividend.  Although Schlegels spend a great deal of time arguing this issue, they have never filed an objection to CitiMortgage's claim.  Therefore, we fail to see how they can argue this issue on appeal.  Without objection, CitiMortgage's claim is deemed allowed, § 502(a), subject to the bankruptcy court's subsequent Valuation Order determining the claim to be unsecured under § 506(a) and the confirmation order, declaring that CitiMortgage will be treated and paid in the Plan as an unsecured nonpriority creditor.

Without question, the claims bar date in Schlegels' case was April 30, 2009.  The Motion to Value and the avoidance of CitiMortgage's junior lien came later.  The Valuation Order, which stripped CitiMortgage's lien and rendered its claim unsecured, was entered on October 22, 2009.  Until that point, CitiMortgage was operating in this case as a secured creditor.

Secured creditors in a chapter 13 case may, but are not required to, file a proof of claim.  See Rule 3002(a).  Such

---

[8] Section 1329(a) provides, in relevant part:  "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim[.]"

creditors may choose not to participate in the bankruptcy case and look to their liens for satisfaction of the debt. <u>Brawders v. Cnty. of Ventura (In re Brawders)</u>, 503 F.3d 856, 872 (9th Cir. 2007). Secured liens pass through bankruptcy unaffected. <u>Long v. Bullard</u>, 117 U.S. 617, 620-21 (1886); <u>Dewsnup v. Timm</u>, 502 U.S. 410, 418 (1992); <u>In re Brawders</u>, 503 F.3d at 872. However, if the lien is avoided and the formerly secured creditor failed to file a secured claim prior to the claims bar date, the creditor may file a proof of claim within 30 days after the order avoiding the lien becomes final. <u>See</u> Rule 3002(c)(3);[9] <u>Prestige Ltd. P'ship-Concord v. E. Bay Car Wash Partners (In re Prestige Ltd. P'ship-Concord)</u>, 234 F.3d 1108, 1118 (9th Cir. 2000); <u>Zebley v. First Horizon Home Loans (In re Ong)</u>, 469 B.R. 599, 601 (Bankr. W.D. Pa. 2012).

The exception under Rule 3002(c)(3) permits a creditor like CitiMortgage, whose unsecured claim arises as the result of an order invalidating its secured claim, to file a proof of claim within 30 days after entry of the order regardless of expiration of the 90-day limitation in Rule 3002(a). As explained in the Advisory Committee Notes to Rule 3002(c):

> Although the claim of a secured creditor may have arisen before the petition, a judgment avoiding the security interest may not have been entered until after the time for filing claims has expired. Under Rule 3002(c)(3), the creditor who did not file a secured claim may nevertheless file an unsecured claim within the time prescribed. A judgment does not become final for the purpose of starting the 30 day period provided for by paragraph (3) until the time for appeal has expired or,

---

[9] Rule 3002(c)(3) provides in part: "An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property."

-17-

if an appeal is taken, until the appeal has been disposed of.

CitiMortgage filed its proof of claim, albeit as a secured claim, on October 12, 2009, after the bankruptcy court had orally granted the Motion to Value, but before the entry of the Valuation Order on October 22, 2009, which deemed the claim unsecured. Thus, its claim was timely filed within the 30 days required under Rule 3002(c)(3). See In re Prestige Ltd. P'ship-Concord, 234 F.3d at 1118 (proof of claim filed before judgment became final considered timely for purposes of Rule 3002(c)(3)when court waived creditor's security interest).

Schlegels never objected to CitiMortgage's timely filed claim. Their contention that they had no notice of CitiMortgage's claim defies credulity. Trustee's Notice of Claims sent to Schlegels and their counsel, just days after confirmation, conspicuously listed CitiMortgage's unsecured claim and the amount to be paid. Therefore, Trustee did not err in making payments to CitiMortgage under the Plan.[10]

### VI. CONCLUSION

We conclude that the bankruptcy court did not abuse its discretion in granting the Motion to Dismiss, particularly since

---

[10] Although not raised by the Schlegels, the bankruptcy court did not engage in any "best interest of creditors" analysis before dismissing their case, which is required. Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006). However, on this record dismissal appears to be in the best interest of creditors and the estate. Over the course of 60 months, the unsecured creditors have not received anywhere near the 48% dividend required by their Plan. With dismissal and the dissolving of the stay, these creditors are now free to pursue collection of their claims against the Schlegels, which would likely result in more money than if the case had been converted to chapter 7.

-18-

Schlegels failed to object to CitiMortgage's claim or to modify their Plan to address the claim once filed.  By failing to pay their unsecured creditors the promised 48% dividend, they did not complete plan payments within the applicable commitment period. Accordingly, we AFFIRM.