

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re: | BAP No.   CC-14-1380-TaPaKi |
| JOSE NOE CARMONA, | Bk. No.   09-15452-CB |
| Debtor. | |
| JOSE NOE CARMONA, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| AMRANE COHEN, Chapter 13 Trustee, | |
| Appellee. | |

Argued and Submitted on March 19, 2015
at Pasadena, California

Filed - April 21, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:     Mariano A. Alvarez argued for appellant Jose Noe Carmona; Jay K. Chien argued for appellee Amrane Cohen, Chapter 13 Trustee.

Before:   TAYLOR, PAPPAS, and KIRSCHER, Bankruptcy Judges.

---

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

Chapter 13[1] debtor Jose Noe Carmona appeals from an order dismissing his chapter 13 case pursuant to § 1307(c)(6). We AFFIRM.

**FACTS**

The Debtor filed a chapter 13 petition on June 5, 2009. Amrane Cohen was appointed as the chapter 13 trustee ("Trustee").

In his schedule of creditors holding secured claims ("Schedule D"), the Debtor listed real property located in Garden Grove, California (the "Property") with a current value of $395,500. Schedule D also reflected two deeds of trust encumbering the Property. Given the value of the Property and the amount of scheduled debt, the senior trust deed-related debt was partially undersecured. This left the junior trust deed-related debt ("Junior Debt") entirely unsecured.

The trust deed holders both filed proofs of claim. In particular, the junior trust deed holder's proof of claim (the "Junior Claim") evidenced that the Junior Debt totaled $137,211.75, which included $17,344.96 in mortgage arrears.[2] The Debtor responded to the unsecured status of the Junior Debt and moved to value the Property and to avoid the trust deed securing the Junior Debt (the "Junior Trust Deed").

During this early phase of the case, the Debtor concurrently

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

sought plan confirmation. An amended plan ("Plan") proposed a monthly payment of $956.76 for a term of 60 months, based on a base plan amount of $57,405.87. The Plan estimated that it would pay 100% to allowed, nonpriority unsecured claims and estimated these claims at $4,017. It also provided for payment on the senior trust deed-related debt; payments under the Plan cured prepetition arrearage while regular monthly payments continued outside the Plan. Finally, the Plan stated that the Debtor would avoid the Junior Trust Deed pursuant to a lien strip; it did not otherwise directly address the Junior Claim, but contained the following language:

> HOLDERS OF SECURED CLAIMS . . . WILL BE PAID ACCORDING TO THIS PLAN AFTER CONFIRMATION UNLESS THE SECURED CREDITOR . . . FILES A PROOF OF CLAIM IN AN AMOUNT DIFFERENT THAN THAT PROVIDED IN THE PLAN. If a secured creditor . . . files a proof of claim, the creditor will be paid according to that proof of claim, unless the court orders otherwise.

Dkt. No. 19.

No one objected to the Plan, and the bankruptcy court held a confirmation hearing on September 9, 2009. Three weeks later, on October 1, 2009, the Trustee filed a report and motion for confirmation of plan and allowance of fees ("Confirmation Motion"). In pertinent part, the Trustee stated that the Plan would "pay 100% to unsecured creditors." Dkt. No. 21. The Debtor did not oppose or otherwise respond to the Trustee's Confirmation Motion.

Thereafter, the bankruptcy court entered an order confirming the Plan. The confirmation order, as supplied by the Trustee, did not check the box indicating that the Plan was a "base plan," which would have limited payment on unsecured claims to the base

3

amount set forth in the Plan.

The Trustee next filed a notice of intent to pay claims ("Notice of Payment"), which listed the Junior Claim and the $17,344.98 in mortgage arrears on the Junior Debt (the "Junior Mortgage Arrears"). The notice indicated the Trustee's intent to pay the Junior Mortgage Arrears unless the Debtor (or another party in interest) filed an objection by December 9, 2009. No one objected.

Meanwhile, following several continuances, the bankruptcy court denied the lien strip motion without prejudice on December 10, 2009. Later that month, the Debtor filed an objection to the Junior Claim. The bankruptcy court overruled the Debtor's objection; no appeal was taken.

A year later, on February 25, 2011, the Debtor filed a "Stipulation on Standing & Allowance of Second Trust Deed as Non-Priority General Unsecured Claim and Conditions Therefor [sic]." The stipulation, between the Debtor and the Junior Claim holder and dated March 2010, allowed the Junior Claim as a nonpriority general unsecured claim and provided for payment as such under the Plan. It also conditioned avoidance of the lien on the Debtor's completion of the Plan and receipt of a chapter 13 discharge. Neither the Debtor nor the Junior Claim holder, however, submitted an order to the bankruptcy court for approval.

Several years passed; the Debtor made his monthly Plan payments, and the Trustee filed periodic accounting reports.[3]

---

[3] The Trustee's periodic accounting reports did not reflect any payments on the Junior Mortgage Arrears.

Then, on March 28, 2014 – nearly the 58th month of the Plan – the Trustee moved to dismiss the case, seeking dismissal on or after April 30, 2014, unless Debtor tendered a payoff balance of $18,900 or otherwise completed the case pursuant to § 1322(d). The Trustee based the motion on "unreasonable delay by the Debtor[] with respect to the term of the confirmed Plan by failing to complete the Plan according to its terms (11 U.S.C. § 1307(c)(6))." Dkt. No. 55. The motion included notice that a response and request for a hearing were due by April 11, 2014.

The Debtor did nothing. As a result, on May, 21, 2014, the Trustee filed a declaration of non-opposition and attested that the arrears to date were $956.76. This amount appears to be in error. Eight hours later, the Debtor filed an opposition.[4] He focused on the alleged res judicata effect of the Plan and asserted that it precluded any claim for payment of the Junior Claim.

On May 29, 2014, the 59th month of the Plan, the Debtor filed another motion to avoid the Junior Trust Deed. Curiously, the Debtor also refiled the stipulation previously filed in February of 2011. But, again, the Debtor simply filed the

---

[4] Although there is no argument on this point, the Debtor's opposition was untimely. Under Local Bankruptcy Rule 9013-1(o)(3) of the Central District of California, if there is no response and request for a hearing, the moving party must: "[p]romptly file a declaration attesting that no timely response and request for hearing was served upon the moving party," lodge a proposed order, and deliver a copy of the declaration to the judge's chambers. Here, the Trustee filed the declaration, albeit without attachment of the motion to dismiss. But, it is unclear whether the Trustee lodged the proposed order or delivered the judge's copy.

stipulation; he did not submit an order with the stipulation or otherwise bring the stipulation to the bankruptcy court's attention.

The bankruptcy court heard the motion to dismiss and the late hour lien strip motion on July 10, 2014 - the 61st month of the chapter 13 case. It first heard and granted the Debtor's lien strip motion.[5]

The bankruptcy court then turned to the Trustee's motion to dismiss. The Trustee reasserted his calculation of the payoff balance required to complete the Plan and argued that the lien strip changed only the claim status of the Junior Claim from secured to unsecured. The Debtor argued that the Plan did not provide for the Junior Claim, either as a secured or an unsecured claim, and that because the Junior Claim holder did not timely object to the lack of treatment in the Plan, its claim was effectively eliminated. The bankruptcy court rejected the Debtor's position and granted the motion to dismiss.

The bankruptcy court entered the order dismissing the chapter 13 case on July 25, 2014. The Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C.

---

[5] In an established pattern, the Debtor once again failed to submit an order on the lien strip motion. Although the issue is not on appeal, the bankruptcy court's grant of the lien strip was an effective and binding determination on the parties notwithstanding that it did not enter an order on the bankruptcy case docket. See Noli v. C.I.R., 860 F.2d 1521, 1525 (9th Cir. 1988); cf. Fed. R. Bankr. P. 7058 (implementing Civil Rule 58 in adversary proceedings).

6

§ 158.

## ISSUE

Whether the bankruptcy court abused its discretion in dismissing the chapter 13 case pursuant to § 1307(c)(6).

## STANDARD OF REVIEW

We review the bankruptcy court's dismissal of the chapter 13 case for an abuse of discretion. Schlegel v. Billingslea (In re Schlegel), 526 B.R. 333, 338 (9th Cir. BAP 2015). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

On appeal, the Debtor asserts that the bankruptcy court erred in dismissing his chapter 13 case and argues that: (1) the confirmed Plan provided $4,017 to unsecured creditors and this was res judicata; (2) the case dismissal violated due process; (3) the Trustee was estopped from requesting an additional $18,900 after recommending confirmation of the Plan; (4) the $18,900 amount was arbitrary; (5) his Plan payments for 58 months vested him with rights that are not subject to modification; and (6) the issue of unreasonable delay is moot.

The Trustee points out that the Debtor raises all of these arguments for the first time on appeal. Our review of the record confirms that in opposing the motion to dismiss, the Debtor's

7

arguments as to res judicata and estoppel focused on the Junior Claim. His remaining arguments, however, are raised for the first time on appeal and, thus, we do not address them. Mano-Y & M, Ltd. v. Field (In re The Mortg. Store, Inc.), 773 F.3d 990, 998 (9th Cir. 2014).

Under § 1307(c), the bankruptcy court may dismiss a chapter 13 case for "cause," including a material default under a confirmed plan. Whether dismissal is appropriate is committed to the sole discretion of the bankruptcy court. In re Schlegel, 526 B.R. at 339.

Here, the bankruptcy court summarily granted the Debtor's lien strip motion and then granted the Trustee's motion to dismiss the chapter 13 case. Apparently, it dismissed the case pursuant to the Trustee's request under § 1307(c)(6). The bankruptcy court, however, did not make findings in this regard, either at the hearing or in the dismissal order. Thus, it is not clear whether the bankruptcy court found a material default under the Plan based on the Debtor's failure to pay the Junior Claim as a secured claim or an unsecured claim or both.

Nonetheless, we conclude that the Plan required payment on the Junior Claim, whether as a secured claim or an unsecured claim. Under either scenario, the Debtor's failure to pay the Junior Claim as required by the Plan constituted a material default thereunder. Given the timing of the case, the bankruptcy court did not abuse its discretion in dismissing the case.

**A. To the extent the Junior Claim was a secured claim, the Plan required payment of the Junior Mortgage Arrears.**

The Plan required payment on secured claims, either

8

according to the treatment under the Plan or, to the extent the claim amount differed, the secured creditor's proof of claim. The Junior Trust Deed holder timely filed the Junior Claim as a secured claim. The Plan did not provide for payment of the Junior Claim, although it stated the Debtor's intent to strip the Junior Trust Deed. As a result, the Junior Claim contained an amount different than that provided for in the Plan, and the Plan required payment of the Junior Claim absent a bankruptcy court order directing otherwise.

Importantly, the Trustee included the Junior Mortgage Arrears in the December 2009 Notice of Payment. The notice stated that "the Trustee intend[ed] to pay [the] claims filed by the creditors listed below unless an objection [was] made by the Debtor(s) . . . within fifteen (15) days from the date of this notice." Dkt. No. 26. Both the Debtor and Debtor's counsel received service of the Notice of Payment; the Debtor did not timely object. He subsequently objected to the Junior Claim, but the bankruptcy court overruled the objection. According to the Trustee, the $18,900 payoff balance was based on the Junior Mortgage Arrears, plus trustee fees necessary to complete the Plan.

In this respect, unless and until the bankruptcy court granted the lien strip motion or ordered otherwise, the Trustee was required to pay, at a minimum, the Junior Mortgage Arrears. Contrary to the Debtor's belief, a bankruptcy court order was required to effectuate the lien strip under the Code. That the Debtor's Plan reflected his intent to strip the Junior Trust Deed did not make it so. Under these circumstances, the Junior Trust

9

Deed retained its secured claim status and was poised to "pass through" the chapter 13 case until the bankruptcy court granted the lien strip in the 61st month.

Similarly, that the stipulation treated the Junior Claim as unsecured did not change the status of the claim. In the absence of a bankruptcy court order, the stipulation was nothing more than an agreement between the Debtor and Junior Claim holder; it did not bind the Trustee. And, as we discuss below, even if the stipulation was effective, both it and the Plan required payment of the Junior Claim as an unsecured claim.

Therefore, if the belated lien strip did not automatically transmute the Junior Claim into an unsecured claim, the Debtor was required to pay the arrears on the Junior Mortgage Arrears pursuant to the Plan and the Trustee's Notice of Payment.

**B.      To the extent that the Junior Claim was an unsecured claim, the Plan required 100% payment.**

Prior to oral argument on this appeal, the Trustee filed a Federal Rule of Appellate Procedure 28(j) letter, advising the Panel of a recent decision, In re Schlegel, issued by a different three-judge Panel. On March 4, 2015, we issued an order advising the parties to address at oral argument whether In re Schlegel affected the outcome of this appeal.

In Schlegel, the bankruptcy court dismissed the debtors' chapter 13 case for failure to complete plan payments within five years. The debtors previously sought and obtained a real property valuation order from the bankruptcy court, which rendered the junior lienholder's claim wholly unsecured. 526 B.R. at 335-36. Subsequently, the bankruptcy court confirmed

10

a chapter 13 plan, which provided for a 48% dividend to unsecured creditors. Id. at 336. The confirmation order provided that, consistent with the confirmed plan and valuation order, the junior lienholder's claim would be treated and paid as an unsecured claim. Id.

On the eve of the 60th month of the Plan, the debtors moved for a hardship discharge; the chapter 13 trustee objected. Id. The trustee concurrently moved to dismiss the case for failure to complete the Plan within five years of commencement of the case. Id. at 337. The bankruptcy court denied the motion for hardship discharge and granted the motion to dismiss. Id. The debtors appealed only from the case dismissal. Id. at 338.

The Panel affirmed the bankruptcy court. In relevant part, it concluded that the failure to pay unsecured creditors the promised percentage dividend constituted a material default under a term in the confirmed plan and, thus, an appropriate basis for dismissal under § 1306(c)(6). Id. at 341.

Here, the Plan, interpreted through the Trustee's Confirmation Motion and the confirmation order, was a 100% plan with respect to allowed, unsecured claims.[6] To the extent the Junior Claim was an unsecured claim, the Plan required that it be

---

[6] In relevant part, the Plan provided that:
The base plan amount is $57,405.87, which is estimated to pay 100% of the allowed claims of nonpriority unsecured creditors. If that percentage is less than 100%, the Debtor will pay the Plan Payment stated in this Plan for the full term of the Plan or until the base plan amount is paid in full, and the Chapter 13 Trustee may increase the percentage to be paid to creditors accordingly.

11

paid in full.

When the Trustee filed his Confirmation Motion, indicating that the Plan would provide a 100% payment to unsecured creditors, the Debtor did not object or respond. Insofar as there was any question regarding the promised Plan percentage to unsecured creditors, the Trustee's motion resolved any such ambiguity. And, the bankruptcy court's confirmation order did not treat the Plan as a "base plan," as the box in the form order relating to a base plan was not checked.

As a result, the Debtor's failure to pay 100% on the Junior Claim, to the extent it was an unsecured claim, constituted a material default under the Plan and an appropriate basis for case dismissal under § 1307(c)(6). See In re Schlegel, 526 B.R. at 341.

It appears that after orally granting the Debtor's lien strip motion, the bankruptcy court operated under the assumption that the Junior Claim became an unsecured claim. Typically, if a "lien is avoided and the formerly secured creditor failed to file a secured claim prior to the claims bar date, the creditor may file a proof of claim within 30 days after the order avoiding the lien becomes final." Id. at 342 (citing Fed. R. Bankr. P. 3002(c)(3)).

Here, the Junior Claim was filed as a secured claim. Under these circumstances, the Junior Claim claimant was entitled to file an amended proof of claim. The bankruptcy court, perhaps in light of the fact that the case already exceeded 60 months, did not require this formality. We discern no error in this regard. Put bluntly, because the Debtor never paid any amount on this

12

claim and, instead, allowed payment to go entirely to other unsecured creditors, it was too late to salvage the Plan. The Junior Claim of over $137,000 dwarfed the other unsecured claims and required an unachievable redistribution of Plan payments already made. Given the timing, Plan modification was impossible. See 11 U.S.C. § 1329(c).

The Debtor continues to argue that the stipulation with the Junior Claim holder effectuated a lien strip such that the Junior Claim was an unsecured claim. Accepting that assertion as true, the Debtor expressly agreed to treat the Junior Claim as an unsecured claim under the Plan, and a modification of the Junior Claim was not required. The Debtor, however, never obtained an order on the stipulation so that the Trustee paid the Junior Claim as an unsecured claim, never moved to amend the Plan, and never otherwise took any step to pay any amount owed on the Junior Claim. Even under the stipulation, the Debtor was not entitled to ignore the Junior Claim.

The Debtor argues that the Plan was res judicata as to the amount of the unsecured claims. We disagree. The Plan provided that the Debtor **estimated** the amount of unsecured claims as $4,017. Given the procedural posture of this case, the possibility always existed that the unsecured claims amount could and would increase to include the amount of the Junior Claim. The Debtor's estimate of the unsecured creditor claims did not foreclose this possibility.

Instead, the Debtor's position in both opposing the motion to dismiss and then on appeal contradicts earlier positions taken before the bankruptcy court. The Debtor's first lien strip

13

motion – filed prior to the amended Plan and Plan confirmation – reflected his understanding that the Junior Claim would be treated as an unsecured claim under the Plan. And, the stipulation with the Junior Claim holder expressly provided that the Junior Claim would "be allowed as a nonpriority general unsecured claim and shall be paid as such in accordance with the Debtor's Plan." Dkt. Nos. 41, 62.

In sum, the bankruptcy court did not err in determining that the Debtor's failure to pay the Junior Claim - as either a secured or an unsecured claim - constituted a material breach of the Plan. The timing of the events and the Plan length foreclosed the possibility of Plan modification. Therefore, the bankruptcy court did not abuse its discretion by dismissing the chapter 13 case pursuant to § 1307(a)(6).[7]

## CONCLUSION

Based on the foregoing, we AFFIRM.

---

[7] Although the issue was not raised by the Debtor, the bankruptcy court did not conduct the requisite "best interest of creditors" analysis before dismissing the case. See In re Schlegel, 526 B.R. at 343 n.10.

Nonetheless, on this record the error is harmless as case dismissal clearly was in the best interest of creditors and the estate. Although the other unsecured creditors received a 100% dividend, the Junior Claim holder has received nothing on its claim during the pendency of the case. As a result, it is now free to pursue its rights and remedies, if any, against the Property, and the Debtor, having cured the default on the senior trust deed mortgage arrears, is free to deal with this obligation as he deems appropriate.

14