NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. OR-18-1128-SKuF |
| PRINCIPIA EQUITAS LLC, | Bk. No. 18-30028-tmb7 |
| Debtor. | |
| CHARLES BARKER, III, | |
| Appellant, | |
| v. | MEMORANDUM* |
| KENNETH S. EILER, Trustee, | |
| Appellee. | |

Argued and Submitted on March 20, 2019
at Portland, Oregon

Filed – March 28, 2019

Appeal from the United States Bankruptcy Court
for the District of Oregon

---

*  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable Trish M. Brown, Bankruptcy Judge, Presiding

———————

Appearances:     Appellant Charles Barker, III, argued pro se.

———————

Before: SPRAKER, KURTZ, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellant Charles Barker, III, is the sole owner and managing member of chapter 7[1] debtor Principia Equitas LLC. Principia's sole asset is a parcel of real property. Barker does not dispute that there is, of record, a first deed of trust fully encumbering the property. For years, Barker has been litigating in nonbankruptcy courts with the alleged holder of the first deed of trust: Bank of New York Mellon (the "Bank"). Barker filed a series of motions in the bankruptcy court seeking to object to the Bank's secured claim even though the Bank never filed a proof of claim and even though the chapter 7 trustee filed a final report identifying Principia's bankruptcy case as a no-asset case. The bankruptcy court held that it had no authority to adjudicate Barker's claim objection because the Bank had not filed a proof of claim and denied each of Barker's motions.

We agree that Barker's motions were not well taken. Barker could not initiate the claims adjudication process by filing a claim objection against

—————————

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

an alleged secured creditor who had not filed a proof of claim. Accordingly, we AFFIRM the bankruptcy court's orders denying Barker's motions.

## FACTS

On January 4, 2018, Principia commenced its bankruptcy case by filing a voluntary chapter 7 petition. Barker signed the petition on behalf of Principia as its managing member. The petition identified the case as a single-asset real estate case. The subject real estate is located in Portland, Oregon. In its schedules, Principia listed the value of the property at $668,840.00. Principia also listed secured debt encumbering the property of $944,114.71, of which $862,423.00 was the disputed claim of the Bank.

Barker has been litigating for years in a number of different courts over the bona fides of the first trust deed of record encumbering the property. The bankruptcy petition and schedules do not identify the type of real property involved, but the papers filed in the nonbankruptcy litigation indicate that the property is a parcel of residential real property.[2]

Many of Barker's filings are redundant, and the purpose of some of them is obscure. Regardless, in the final analysis, they all boil down to a

---

[2] We can and do take judicial notice of the contents of the case dockets in each of the lawsuits that Barker has identified as pertaining to the subject real property. *Estate of Blue v. Cty. of L.A.*, 120 F.3d 982, 984 (9th Cir. 1997). We also take judicial notice of the contents of the underlying bankruptcy case docket. *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir. 1989).

single point; Barker sought to object to the secured claim of the Bank. But the Bank did not file a proof of claim or otherwise participate in the bankruptcy case, and the trustee's final report designated Principia's bankruptcy case as a no-asset case.

On March 20, 2018, the chapter 7 trustee filed an asset inventory report indicating that there might be assets to distribute to creditors. The initial report included an order and notice issued by the bankruptcy court clerk's office directing creditors to file proofs of claim on or before June 18, 2018. However, two days later, on March 22, 2018, the trustee filed an amended report indicating that there were no assets to distribute to creditors and hence the bankruptcy case had been fully administered.

On March 29, 2018, Barker filed a notice indicating that he later would file an objection to the trustee's March 20, 2018 asset inventory report. On April 2, 2018, the bankruptcy court issued a letter in response to Barker's notice. The court pointed out that the March 20, 2018 report had been superseded by the trustee's March 22, 2018 no-asset report. The court directed Barker to file an amended objection if he disputed the trustee's amended report.

One day later, on April 3, 2018, Barker filed a new notice. This one disputed the claim of the Bank. Barker asserted that any interest the Bank claimed in the property was subject to dispute both in terms of amount and validity. According to Barker, there was no proof verifying the existence of

the Bank's interest in the property. Barker further challenged the validity of any assignment of the deed of trust the Bank relied on to establish that it was the successor in interest to the original first trust deed holder. Barker also posited that, even if the Bank had a valid interest in the property, his own interest in the property, arising from his alleged investment of roughly $57,000, was superior. Finally, Barker requested that the court enter an order directing the Bank to produce all documents supporting its interest in the property.

On April 4, 2018, the bankruptcy court entered an order denying all relief requested in Barker's April 3, 2018 notice. The bankruptcy court held that it had no authority to adjudicate a claim objection against the Bank. The court explained that the Bank had not filed a proof of claim, so the court could not determine any claim the Bank might have asserted had it filed a proof of claim.

On April 23, 2018, Barker filed an amended notice once again disputing the Bank's claim. The grounds set forth in the amended notice mirror those set forth in Barker's April 3, 2018 notice. On April 25, 2018, the bankruptcy court entered an order denying the amended notice of disputed claim for the same reasons it denied the original April 3, 2018 notice.

On May 4, 2018, Barker moved for an order delaying the closing of Principia's bankruptcy case. As Barker put it: "There are critical actions

that must be undertaken on behalf of Debtor, which substantially affect the disposition of the instant case, as well as the economic impact to both the Debtor, as well as all Creditors." According to Barker, Principia's bankruptcy counsel no longer was acting in Principia's best interests and effectively had abandoned the case. Barker reasoned that the court should give him more time before closing the case so that he could find new counsel to represent Principia's interests in the bankruptcy case.

On May 8, 2018, the bankruptcy court entered an order denying Barker's motion. As the court pointed out, Barker failed to specify what critical actions needed to be taken in the bankruptcy case and how or why Principia's counsel allegedly had failed or refused to act. Lacking any better explanation from Barker, the bankruptcy court presumed that the motion was simply a third attempt by Barker to put the Bank's claim at issue. The bankruptcy court once again held that it could not address the Bank's claim. Based on this holding, and on the absence of evidence supporting the relief requested, the bankruptcy court denied the motion.

On the same day, May 8, 2018, the bankruptcy court entered its order approving the chapter 7 trustee's no-asset final report and closing Principia's bankruptcy case. Barker timely appealed the two May 8 orders.

## JURISDICTION

The bankruptcy court has jurisdiction over claims litigation pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C.

6

§ 158.

## ISSUE

Did the bankruptcy court commit reversible error when it denied Barker's motions, thereby precluding him from objecting to the Bank's claim, given that the Bank did not file a proof of claim?

## STANDARD OF REVIEW

This appeal raises a question of law regarding the claims adjudication process, which we review de novo. *See HSBC Bank USA, Nat'l Ass'n v. Blendheim (In re Blendheim)*, 803 F.3d 477, 484–85 (9th Cir. 2015).

## DISCUSSION

On appeal, Barker states the same argument a variety of different ways. According to Barker, if he could use Principia's bankruptcy case to challenge the Bank's claim and attack its asserted lien against the subject real property, then all of Principia's other creditors (including himself) would benefit. Towards this end, Barker attempted to force the Bank to participate in the bankruptcy claims process even though the Bank did not file a proof of claim and did not in any other way participate in the bankruptcy case. The bankruptcy court held that, under these circumstances, Barker could not force the Bank to participate in the bankruptcy claims process.

We agree with the bankruptcy court. It long has been held that liens on real property ordinarily pass through bankruptcy unaffected. *Dewsnup*

*v. Timm*, 502 U.S. 410, 418 (1992). Therefore, secured creditors have the option to forego any distribution from the bankruptcy estate and instead may rely on their lien rights outside of bankruptcy to satisfy any debt they are owed. *See Schlegel v. Billingslea (In re Schlegel)*, 526 B.R. 333, 342 (9th Cir. BAP 2015) (citing *Brawders v. Cty. of Ventura (In re Brawders)*, 503 F.3d 856, 872 (9th Cir. 2007)).

In short, secured creditors generally cannot be forced to adjudicate their claims in a bankruptcy case. Participation in the bankruptcy claims process is voluntary rather than compulsory for secured creditors. As stated by the Ninth Circuit Court of Appeals:

> Every claim must go through the allowance process set forth in 11 U.S.C. § 502 before the claim holder is entitled to participate in the distribution of estate assets. The bankruptcy court may decline to allow—or "disallow"—a claim for a variety of reasons. **But importantly, for creditors holding liens secured by property, filing a proof of claim and participating in the allowance process—indeed, participating in the bankruptcy process as a whole—is completely voluntary. A creditor with a lien on a debtor's property may generally ignore the bankruptcy proceedings and decline to file a claim without imperiling his lien, secure in the in rem right that the lien guarantees him under non-bankruptcy law: the right of foreclosure**.

*In re Blendheim*, 803 F.3d at 484–85 (citations omitted and emphasis added); *see also Wade v. Forest Villa Homeowners' Ass'n (In re Wade)*, BAP No. NC-14-1562-DJuTa, 2015 WL 7281670, at *3 n.4 (9th Cir. BAP Nov. 17,

2015), *aff'd*, 671 F. App'x 689 (9th Cir. 2016) ("a secured creditor 'may disregard the bankruptcy proceeding, decline to file a claim and rely solely upon his security if that security is properly and solely in his possession'") (quoting *U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of N.Y.C.*, 331 U.S. 28, 33 (1947)).

Barker attempted to invoke the bankruptcy claims process against the Bank in a no-asset case where the Bank had not filed a proof of claim.[3] That claims process would be meaningless unless the trustee administered the real property and that administration yielded funds for distribution to the estate's creditors. But the trustee did not administer the real property. Instead, the chapter 7 trustee duly filed a final report identifying this case as a no-asset case. Barker has never disputed that there exists a lien of record fully encumbering the sole asset of the estate – the subject real property. Thus, on its face, there was nothing incorrect with the trustee's decision not to administer the asset and to file a no-asset final report. Nor does the record reflect any error in the bankruptcy court's approval of that report and its decision to close the case. Indeed, Barker never filed any paper in the bankruptcy court specifically arguing that the trustee's no-

---

[3] Barker admittedly has been litigating with the Bank for years in nonbankruptcy venues concerning the lien. It is telling that, after all of that litigation, Barker was unable to present in the bankruptcy court any evidence to support his concerns regarding the lien. All he presented to the court were his suspicions and his speculation regarding the lien.

asset report was improvident or in error.

On appeal, Barker assails the decisions of both the trustee and the bankruptcy court. At oral argument, Barker complained that the trustee's and the bankruptcy court's inaction with respect to the Bank's alleged lien demonstrated an absence of "intellectual curiosity." But intellectual curiosity does not govern the claims adjudication process, particularly when there is no proof of claim filed against the bankruptcy estate. There is no legitimate purpose served in deciding who is entitled to a distribution from a debtor's bankruptcy estate when there are no assets to distribute. *In re Wade*, 2015 WL 7281670, at *3 (citing 4 Collier on Bankruptcy ¶ 501.01[3][b] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev.)).

As set forth above, the trustee and the bankruptcy court correctly decided not to take further action based on the dictates of the Bankruptcy Code and Rules. On this record, the bankruptcy court did not commit reversible error when it denied all relief Barker sought in his motions.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's orders denying Barker's motions seeking to invoke the claims adjudication process against the Bank.

10