**In re Georgia Davis HENRY, Debtor.**

**No. 01 B 19852.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 12, 2006.

Melvin J. Kaplan, Bennett A. Kahn, Melvin J. Kaplan & Associates, Chicago, IL, for Debtor.

Keisha Hooks, Office of Marilyn O. Marshall, Chicago, IL, for trustee Marilyn O. Marshall.

### MEMORANDUM OPINION

PAMELA S. HOLLIS, Bankruptcy Judge.

This matter comes before the court on the motion of the Chapter 13 Trustee to dismiss this bankruptcy case. The Trustee argues that the case should be dismissed because it will take over 60 months to complete, and because the plan is in material default since it will not complete in compliance with the confirmed terms. The court has reviewed the papers submitted by the parties. For the reasons stated below, the court denies the motion to dismiss.

### BACKGROUND

Debtor Georgia Davis Henry filed her voluntary petition for relief under Chapter

13 on June 4, 2001. Her plan was confirmed on August 13, 2001, for a duration of 36 months at $1,224 per month. Although Henry has made 57 of her required 59 payments under the plan, she has not completed the plan. On October 30, 2001, the Internal Revenue Service filed a claim in the amount of $38,499.46, classified as follows: $33,138.28 as secured based on a lien recorded against Henry's house; $4,918.08 as an unsecured priority claim; and $443.10 as a general unsecured claim. The secured portion of the claim has since been reduced to $21,000, to reflect the amount of available equity Henry had in her house and personal property on the petition date. The priority portion remained the same, although the unsecured amount was increased commensurate with the decrease in the secured claim.

Henry had scheduled the Service as a priority unsecured creditor in the amount of $31,277.10. As a result of the difference between the Service's filed claim and Henry's scheduled claim, Henry will not complete her plan for at least another 30 months.

Henry had a prior Chapter 13 case, 00 B 25672, pending before Judge Robert E. Ginsberg from September 1, 2000 through April 2, 2001. On December 7, 2000, the Internal Revenue Service filed a proof of claim in that case in the amount of $36,255.07. Even though the Service had recorded the lien on Henry's house on October 9, 1997, the claim it filed in 00 B 25672 was for an unsecured priority claim in the amount of $31,277.10 and a general unsecured claim of $4,977.97.

## LEGAL DISCUSSION

■ 11 U.S.C. § 1322 is titled, "Contents of plan," and under the law applicable to cases filed prior to October 17, 2005, it stated at subsection (d) that:

> The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

Some courts have used this provision (or its predecessor, § 1322(c)), as statutory authority to dismiss a case where payments would continue beyond five years even though the terms of the confirmed plan did not so anticipate. *See In re Jackson,* 189 B.R. 213, 214 (Bankr.M.D.Ala. 1995) ("The maximum duration of any Chapter 13 plan under § 1322(d) will expire five years after the date of the initial payment under the plan."); *In re Woodall,* 81 B.R. 17 (Bankr.E.D.Ark.1987) ("Under this computation, the plan has been pending for more than five years and must be dismissed."). *Woodall* also considered the legislative history, which cautioned against chapter 13 plans extending beyond five years lest the debtor become a "wage slave."

There is no need to resort to legislative history, however, when the plain language of the statute is susceptible to only one interpretation. Section 1322(d) clearly states that "the court may not approve a period that is longer than five years." This court is not being asked to approve a longer period. The plan has already been confirmed, and there is no pending motion to modify.

Instead, this matter is before the court on the Chapter 13 Trustee's motion to dismiss. Motions to dismiss are considered under 11 U.S.C. § 1307(c):

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter,

whichever is in the best interests of creditors and the estate, for cause .... The statute then provides a list of ten (eleven for cases filed after October 17) nonexclusive reasons that may constitute cause. Without repeating each of those reasons herein, the court notes that the list does not include "making payments under the plan beyond the 60th month."

As one court noted,

[W]hile § 1322(c) instructs the Court on the maximum length which it may approve for payments under a Chapter 13 plan, § 1322(c) contains no provision for dismissal of a Chapter 13 plan whose payments extend past a five-year period, but which otherwise complied with the duration limitations at the time of confirmation. Thus, while Congress' intention to prohibit lengthy plans is evidenced in its legislative history, case precedent and the Code, § 1322(c) cannot serve as statutory support for the dismissal of a properly-confirmed plan whose payments have continued beyond five years.

*In re Black,* 78 B.R. 840, 842 (Bankr. S.D.Ohio 1987).

*Black's* comments and the cases that have followed its reasoning have been available since 1987. *See In re Harter,* 279 B.R. 284, 288 (Bankr.S.D.Cal.2002) ("The Court adopts the reasoning of *Black* and holds § 1322(d) does *not* contain a 'drop dead' provision that mandates dismissal of the case after five years."). Congress recently completed an overhaul of the Bankruptcy Code. If Congress was unhappy with *Black's* conclusions and wished to close what it considered a loophole, it had ample opportunity to do so in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

■ Congress did not do so, and so this court will follow the more recent trend that rejects *Jackson* and *Woodall* and al-

lows debtors to continue making payments that stretch beyond 60 months if the plan can be completed within a reasonable period of time. *See Harter,* 279 B.R. 284; *In re Brown,* 296 B.R. 20, 22 (Bankr.N.D.Cal. 2003) ("the court rejects this draconian interpretation of the Bankruptcy Code"). *See also In re Aubain,* 296 B.R. 624 (Bankr.E.D.N.Y.2003) (debtor allowed to cure a default on already-scheduled payments even after 60 months had elapsed).

Some courts have concluded that failure to complete the plan within five years is a material default under § 1307(c)(6), which provides that cause includes "material default by the debtor with respect to a term of a confirmed plan." *See, e.g., In re White,* 126 B.R. 542 (Bankr.N.D.Ill.1991) (Squires, J.) (finding that debtors' failure to make the minimum percentage distribution was a material default, but "the fact that the Debtors have exceeded the five year limitation imposed under section 1322(c) further mandates the Court's exercise of its discretion in favor of dismissal").

■ The court in *Brown,* 296 B.R. at 22, set forth a four factor test to determine whether cause for dismissal existed when a plan would not complete within 60 months:

**1. How much longer is it going to take to complete the plan?**

It will take approximately 30 months for Henry to complete this plan. *See Harter,* 279 B.R. 284 (extra two weeks); *Brown,* 296 B.R. at 22 (extra 12 months).

**2. Has the debtor been diligently making plan payments?**

Henry has been diligent in making her payments. Her brief in response points out that she is a widow on a fixed income. This fixed income allegedly consists of Social Security disability payments in the amount of $1,195 per month and a widow's

pension of $722 per month.[1] On this total income of $1,917 per month, Henry has been making plan payments of $1,224, which includes her $626.61 mortgage payment. In other words, nearly a third of her income has been directed toward her non-mortgage plan payments. Furthermore, Henry's counsel asserts that the only two payments Henry missed occurred after the death of her brother and after the death of her aunt, which caused her to expend funds to travel to Mississippi for the funerals.

Moreover, the court has reviewed and takes judicial notice of the electronic database maintained by the Chapter 13 Trustee. During the past five years, Henry has paid $36,464.94 toward her mortgage principal and cured her $12,404.71 mortgage arrearage.

> It takes a very unusual case like this one to remind the Court forcefully and indelibly what an incredible personal sacrifice many a . . . chapter 13 debtor has to endure to complete a five year plan to cure substantial prepetition arrearages on a first mortgage loan.

*Aubain*, 296 B.R. at 633.

### 3. How much time has elapsed since confirmation before dismissal is sought?

Henry's plan was confirmed on August 13, 2001. The Internal Revenue Service filed its proof of claim less than three months later. Yet the Chapter 13 Trustee did not move for dismissal until more than four and a half years had elapsed since plan confirmation. In fact, there are no entries on the court's docket between confirmation and the dismissal motion, except for an order assigning the case to this Trustee 17 days after confirmation, and an order assigning the case to the undersigned when the original judge retired.

It appears from the docket that the Trustee could have discerned that the plan would go beyond 60 months immediately after the proof of claim was filed. Nevertheless, the Trustee continued to accept plan payments, waiting until Henry had paid more than $65,000 into her plan before moving for dismissal. *See Brown*, 296 B.R. at 22 ("The debtor has been making substantial payment for three and a half years, totaling more than $17,000; it would be extremely cruel to pull the rug out from under him at this late date.").

### 4. If the plan cannot be completed on time due to a large prepetition claim, was the debtor culpable in failing to properly schedule the claim?

The Trustee argues that Henry knew or should have known about the correct status of her tax debt. However, the court notes that in Henry's previous case, the Service filed a proof of claim in the amount of $36,255.07. Even though the Service had recorded the lien on Henry's house *more than three years previously,* the claim it filed in 00 B 25672 was for an unsecured priority claim in the amount of $31,277.10 and a general unsecured claim of $4,977.97. No portion of the claim filed by the Service in Henry's first case was alleged to be secured. The court will not conclude that Henry should have known about the tax lien when even the Service did not know the correct status of its own claim.

In fact, when Henry filed her second case she scheduled the Service with a priority unsecured claim in the amount of

---

1. Henry's original Schedule I, which has never been amended, shows disability income of $1,046, a pension of $691, and rental income of $400. It also indicates that she has three nieces living with her, ages 30, 9 and 8.

$31,277.10, exactly the same amount the Service had claimed on its proof of claim in Henry's first case. There is no reason to find Henry culpable for failing to properly schedule the Internal Revenue Service in this case.

In conclusion, only one of the *Brown* factors suggests that dismissal might be appropriate, and that is the length of time remaining for Henry to complete the plan. In light of the unique and particular circumstances of this case, however, the court will deny the motion. Henry is a widow, living at or below the poverty level.[2] Yet she has faithfully made her plan payments for 59 months, missing only two payments.

Furthermore, the court cannot place the blame for the incorrectly scheduled claim on Henry's shoulders when even the Internal Revenue Service did not know that it held a secured claim. Finally, the Chapter 13 Trustee allowed Henry to make plan payments for more than four years after the Service's claim was filed, even though it should have been clear that the plan could not complete within 60 months.

According to the Chapter 13 Trustee's electronic database, as of June 5, 2006, Henry has paid $70,992 into her plan. None of her creditors are asserting that distribution is taking too long, and no post-petition creditors have appeared to complain that they are stayed from collection.

For all of these reasons, the court finds that cause has not been shown for dismissal. The Chapter 13 Trustee's motion to dismiss is denied.

---

2. Henry's Schedule I indicates a household of 4 persons. According to that same Schedule I, her income is $2,137 per month. 150% of the HHS Poverty Guidelines for 2005 for a 4 person family unit is $2,418.75.