**In re Samuel D. HILL and Susie M. Hill, Debtors.**

**Helen M. Garcia, Debtor.**

**Nos. 02–0014–A13, 02–01314–M13.**

United States Bankruptcy Court, S.D. California.

Aug. 7, 2007.

Nathan Shilberg, El Cajon, CA, for Debtors.

Rebecca Pennington, San Diego, CA, for Chapter 13 Trustee.

### ORDERS ON TRUSTEE'S MOTIONS TO DISMISS

PETER W. BOWIE, Chief Judge.

The above-captioned cases were heard on the same date and involve a common issue of law. Specifically, the Chapter 13 Trustee has moved to dismiss both cases because they have exceeded 60 months in length. Debtors in both cases oppose, and ask for more time to complete performance under their respective plans.

This Court has subject matter jurisdiction over both cases pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. These are core proceedings under 28 U.S.C. § 157(b)(2)(A), (O).

#### Hill

The Hills filed their Chapter 13 petition on January 16, 2002, through their current attorney of record. On the same date, they filed their proposed plan, providing for monthly payments of $675 and a 100% dividend to unsecured creditors. Their Schedules tell an important part of the story because they owned their home free of all liens except a small property tax obligation of $541. They valued their

home at $165,000. They also declared $27,772.62 in general unsecured debt, plus $2,780 in the unsecured portion of their vehicle debt. Their income was from a Civil Service pension and a nominal sum from Social Security, with a combined total of $2,034 per month.

At the meeting of creditors, the debtors signed a modification of their plan to add 10% interest for the unsecured creditors, undoubtedly because of the amount of non-exempt equity in their home. Subsequently, their plan, as modified, was confirmed on April 24, 2002.

The difficulty in this case has arisen because at the time of confirmation the claims bar date had not passed. The total claims ultimately received exceeded the claims listed on the Schedules. Had those amounts been known at time of confirmation, the plan would not have been feasible, and therefore not confirmable. But, it was confirmed.

On July 25, 2002 the Chapter 13 Trustee sent debtors and their attorney a "Notice of Claims Filed and Intention to Pay Claims". That form showed that several claims listed in the Schedules had not been filed, and the claims that had been filed totaled $46,444.91, not including attorneys' fees or the trustee's administrative costs, and was roughly $16,000 more than scheduled. Debtors did nothing thereafter to seek to amend their plan to bring it to completion within 60 months. The only way they could have done so, however, would have been to increase the monthly plan payment. They could not reduce the percentage paid to unsecureds because of the non-exempt equity in their home. They could not increase their plan payment, either, because their only income was fixed, they were already in their 70'S and had no realistic way of supplementing their income.

On May 5, 2005 the Chapter 13 Trustee sent the debtors and their attorney notice

that their case was projected to exceed the five year time limit by approximately another five years, that they should review their case with their attorney, and that if their case was not "paid in full by the five year date", the trustee would seek dismissal. On August 24, 2006 the trustee sent an almost identical notice, although the projected date of completion had been shortened by almost a year, to August 24, 2011, still over four years in excess of the five year period.

Finally, on May 22, 2007 the Chapter 13 Trustee moved to dismiss, asserting:

[C]ause exists in that it has been over 5 years since case was filed and debtor's plan provides that debtors will pay sufficient funds to the trustee on or before five years from commencement of this case to fully complete the plan.

Mr. Hill opposes the trustee's motion to dismiss. He notes that his wife died in 2006, he is now 77, and still lives on his Civil Service pension without other income. The house remains unencumbered and he now values it at $450,000. He has explored a home equity line of credit and a reverse mortgage, but does not feel those are viable options. Of course, one difficulty with borrowing against the equity in the home is the necessity of repaying the loan. Mr. Hill has no additional income from which to do so.

It appears that Mr. Hill has consistently made payments to the trustee and is substantially current after more than 60 months. He asks that he be allowed to continue to make payments at the current rate until the plan is paid off. He asserts without any contradiction that the problem derives from having innocently underestimated certain creditor claims. The trustee says it will take approximately 53 more months to complete the plan, and Mr. Hill does not disagree.

*Garcia*

Mrs. Garcia's petition was filed on February 6, 2002, and her plan filed the same date provided for payments of $285 per month and 100% to unsecured creditors. She owned her home free and clear of any liens and valued it at $280,000. Because of the non-exempt equity in her home she, too, modified her plan to add 10% interest to unsecured creditors, after which it was confirmed. She listed $12,434 in unsecured debt on Schedule F. Her income was derived from support payments from the County and from Social Security, totaling $1,308.10 per month.

On September 3, 2002 the Chapter 13 Trustee sent notice to Mrs. Garcia and her attorney that the claims which had been filed totaled $29,959, and that two had not filed although they were scheduled. Excluding interest, attorneys fees and the trustee's fees, it would take more than 105 months to pay off all the filed claims.

On May 5, 2005 the Chapter 13 Trustee sent both Mrs. Garcia and her attorney notice of the length problem, with the estimated completion date of October 2, 2010 for the case filed February 6, 2002. As with the Hills the trustee advised that a motion to dismiss would be triggered by failure to pay the plan in full by the five year date. In June, 2006 new counsel substituted in for Mrs. Garcia. On August 24, 2006 the trustee sent another notice to Mrs. Garcia, with a copy to her new counsel. The estimated completion date had changed to April 24, 2010.

Mrs. Garcia, like Mr. Hill, asks to continue at the current rate of payment until she completes the plan. The trustee calculates that would require an additional 33 months, not including attorneys' fees. It appears Mrs. Garcia has no way to increase her income so that she could increase her payments. Her only real asset is the house, but she has no income to pay

any debt service if she borrows against the equity in it.

*Discussion*

At the time both plans were confirmed 11 U.S.C. § 1322(c) required that a plan provide for all payments to be made within 36 months or, for cause, within 60 months. A number of courts have examined whether that requirement is a basis for dismissal, in addition to a requirement for confirmation. In this Court's view, the better reasoned cases hold that § 1322(c) is an element for confirmation, and that a separate statute, § 1307 governs dismissals. Nowhere in § 1307 is it specified that failure to complete a confirmed plan in 60 months is, in itself, a ground for dismissal. See *In re Henry*, 343 B.R. 190 (Bankr. N.D.Ill.2006); *In re Brown*, 296 B.R. 20 (Bankr.N.D.Ca.2003); *In re Harter*, 279 B.R. 284 (Bankr.S.D.Ca.2002); *In re Black*, 78 B.R. 840 (Bankr.S.D.Ohio 1987). The trustee has not argued otherwise.

Does that mean a debtor can continue to pay under a plan almost indefinitely? Some courts have considered that a debtor may continue to perform for a "reasonable" period of time after the 60 months. See *In re Brown, supra* (12 months); *In re Harter, supra* (2 months); *In re Black, supra* ("few months"). The "reasonable" time period may well be drawn from traditional contract law, which generally provides: "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed." Cal. Civil Code § 1657.

The court in *In re Black*, supra, explained the thinking of Congress in adopting the 3 year–5 year provision of § 1322(c). Borrowing from the House Judiciary Committee Report, it wrote:

[I]n certain areas of the country, inadequate supervision of debtors attempting to perform under wage earner plans have [sic] made them a way of life for

certain debtors. Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary servitude....

78 B.R. at 841.

The Chapter 13 Trustee makes two arguments: 1) the amount of time necessary to complete the Hill and Garcia plans, calculated to take at least 53 and 33 more months, respectively, is not reasonable; and 2) each debtor agreed "to pay sufficient funds to the Trustee on or before five years from commencement of this case to fully complete this Plan." That statement appears in the first paragraph of each plan. The trustee argues that on the facts of these cases, because of the time it will take to complete each, there is a "material default by the debtor with respect to a term of a confirmed plan", which is an express ground for dismissal under 11 U.S.C. § 1307(c)(6).

It should be noted that the situation Mr. Hill and Mrs. Garcia find themselves in is not a product of "inadequate supervision", nor is it the product of any neglect or failure to make the required monthly payments to the trustee. If confirmation were held off pending the running of the claims bar date, neither plan would have been confirmable without drawing down on the equity in their homes which, because of their limited and fixed incomes probably would have required sale of the properties. But holding off confirmation significantly delays distributions to any creditors, and most courts do not wait past the claims bar date. See *In re Brown, supra.*

■ Section 1307(c) of Title 11, United States Code, provides in relevant part:

(c) [O]n request of a party in interest or the United States trustee after notice and a hearing, the court may convert a case under this chapter to a case under Chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

. . .

(6) material default by the debtor with respect to a term of a confirmed plan....

As already noted, both debtors expressly agreed in the standard form plans they proposed "to pay sufficient funds to the Trustee on or before five years from commencement of this case to fully complete this Plan." The court finds and concludes that that is a term of each debtor's confirmed plan. When a debtor needs 33 months, or 53 months to add on to performance over the preceding 60–plus months, the Court finds and concludes each is a material breach of a term of each debtor's confirmed plan.

■ The fact that the Court has found a material breach of a plan term does not compel conversion or dismissal under § 1307(c), however. Congress certainly could have written *"shall* convert or dismiss", but instead Congress wrote "may", which grants this Court discretion to decide whether to dismiss even in the face of a material breach. As already noted, Congress fixed the 3 year–5 year provision of § 1322 as a protection for debtors, to provide them the proverbial fresh start within a reasonable period of time and to not subject them to "involuntary servitude" indefinitely. Here, it is the debtors asking to continue under their plans.

■ The Court has struggled the most with the fact that each debtor started their case with sufficient non-exempt equity to pay all their creditors, which is why their confirmed plans call for a 100% dividend plus 10% interest. In the intervening years, that non-exempt equity has grown significantly. If someone were to propose a viable way to use some of that equity to

pay off these plans without forcing the sale of the homes—either now, or later under a reverse mortgage—the Court would be inclined to require the debtors to do so or suffer dismissal of their cases. But no one has proposed a way.

The facts are that each of these debtors has been consistently performing over the past 60–plus months on their confirmed plans to pay unsecured creditors 100% plus 10% interest. No secured claims are being dragged out for vehicles because they were excluded from the plans and paid under their contracts. No real property arrearages are being dragged out either—the only item was $541 Mr. Hill owed the County. Except for the Chapter 13 Trustee's Fees, all the payments go to the unsecured creditors (or for fees for debtors' attorneys). No unsecured creditor has been heard to complain about receiving 100% plus 10% interest over the past five years.

Weighing all the circumstances, including the costs to debtors of dismissing and refiling (which may include accrued contract rates of interest in excess of 10%), recognizing that the automatic stay is not preventing any secured creditor from resorting to its collateral, the Court finds and concludes that it is in the best interests of both the creditors and each of the debtors to allow them to continue to perform under their confirmed plans.

The Court, therefore, exercises its discretion under the circumstances of these two cases to deny the Chapter 13 Trustee's motions to dismiss in each case, for the reasons set out above.

IT IS SO ORDERED.