**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-3341 & 16-3482
_____

IN RE: PAUL E. KLAAS; BETH ANN KLAAS,
Debtors


ELIZABETH SHOVLIN,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Nos. 2-15-cv-00802 & 2-16-cv-00467)
Honorable Arthur J. Schwab, District Judge
_____

Argued: October 26, 2016

Before: FISHER,* VANASKIE, and KRAUSE, *Circuit Judges*

(Filed: June 1, 2017)

_____

* Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.

_____

Phillip S. Simon, Esq. (Argued)
Suite 401
603 Washington Road
Pittsburgh, PA 15228
 *Attorney for Appellees Paul E. Klaas and Beth Ann*
 *Klaas*

Aurelius P. Robleto, Esq. (Argued)
Robleto Law
Suite 1306
401 Liberty Avenue
Pittsburgh, PA 15218
 *Attorneys for Appellant Elizabeth Shovlin*

Owen W. Katz, Esq. (Argued)
Jana S. Pail, Esq.
Ronda J. Winnecour, Esq.
Office of Chapter 13 Trustee
600 Grant Street
3250 USX Tower
Pittsburgh, PA 15219
 *Attorneys for Appellee Ronda J. Winnecour*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

2

The Bankruptcy Code sets certain limits on the amount of time that debtors may be required to remain in Chapter 13 proceedings and make payments on their debts. This case presents two questions of first impression among the Courts of Appeals: whether bankruptcy courts have discretion to grant a brief grace period and discharge debtors who cure an arrearage in their payment plan shortly after the expiration of the plan term, and if so, what factors are relevant for the bankruptcy court to consider when exercising that discretion. Because we conclude the Bankruptcy Code does permit a bankruptcy court to grant such a grace period and the Bankruptcy Court did not abuse its discretion in granting one here, we will affirm the rulings of the District Court, which in turn affirmed the relevant order and judgment of the Bankruptcy Court.

## I.   **Background**

This consolidated appeal presents two decisions for review from the District Court: one affirming the Bankruptcy Court in its denial of Appellant-Creditor's Motion to Dismiss a Chapter 13 bankruptcy proceeding, and the other affirming the Bankruptcy Court's grant of Appellee-Debtors' Motion for Summary Judgment in a related adversary proceeding. Before addressing the facts relevant to those orders, a brief review of the relevant Bankruptcy Code provisions is necessary to understand the rights and obligations at issue in this case.

### A.   Statutory Background

Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301–1330, offers the possibility of relief to individual debtors who have some capacity to make payments on their

debts. 11 U.S.C. § 109(e). After filing a voluntary petition for relief, a Chapter 13 debtor must propose a "plan" that provides for the payment of future earnings to cover claims on the debtor's estate. 11 U.S.C. §§ 1321, 1322(a)-(c). The Code includes requirements for the contents of such a plan, including that the plan must provide for the payment of all priority claims and may not "discriminate unfairly" between classes of unsecured creditors. 11 U.S.C. § 1322. Relevant to this case, the Code requires that if the debtor's income is higher than the median income for the state in which the debtor resides, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1). The proposed plan is subject to court approval, but the Code directs the bankruptcy court to confirm a proposed plan if it complies with the Code's requirements, including that it is proposed in good faith and that it is anticipated "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(1), (a)(3), (a)(6).

The bankruptcy court may appoint a neutral trustee to collect the money paid under the plan and to distribute it to creditors throughout the plan period. 11 U.S.C. § 1302. The total amount to be paid to the trustee in order to complete the goals of the plan, including charges for escrow account fees and the trustee's services, is often referred to as the "plan base." Although "[t]he term 'base' is not found in the Bankruptcy Code," it is "commonly understood to mean the sum of money that a debtor will pay through his Chapter 13 plan." *In re Jenkins*, 428 B.R. 845, 849 (B.A.P. 8th Cir. 2010).

Once confirmed, modifications to the plan are governed by 11 U.S.C. § 1329. That section provides, in

4

relevant part: "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to … extend or reduce the time for such payments." 11 U.S.C. §§ 1329(a)(2). However, it also incorporates § 1322(d)(1)'s five-year term limit by specifying that "the court may not approve" a plan modification that would extend the term to require payments more than five years after the first payment was due under the original plan. 11 U.S.C. § 1329(c). Once a debtor meets his obligations by completing "all payments under the plan," he becomes entitled to "a discharge of all debts provided for by the plan," 11 U.S.C. § 1328, often referred to as a "completion discharge."

Of course, not all debtors are able to meet their plan obligations. In that circumstance, the bankruptcy court may dismiss a case or convert it to a Chapter 7 bankruptcy "for cause," including upon "material default by the debtor with respect to a term of a confirmed plan." 11 U.S.C. § 1307(c)(6). Alternatively, the court may grant a "hardship discharge" of some of the debts if (1) the debtor cannot make all payments due to "circumstances for which [he] should not justly be held accountable," (2) a certain amount of property has already been distributed under the plan, and (3) modification under § 1329 "is not practicable." 11 U.S.C. § 1328(b).

B.    Factual Background

In 2009, Appellee-Debtors Paul and Beth Ann Klaas filed a voluntary Chapter 13 petition in the Western District of Pennsylvania, proposing a plan that required payments of $2,485 each month for sixty months, i.e., five years, and that

5

was confirmed by the Bankruptcy Court. About a year after confirmation, in response to an increase in mortgage payments, the plan was amended to increase the payments to $3,017 a month for the remainder of the sixty-month period. This new monthly payment reflected an anticipated plan base of $174,059.24 that Debtors were then required to pay to complete the plan's goals. Debtors made consistent monthly payments and, after sixty months, they had paid a total of $174,104, slightly exceeding their projected plan base.

Nevertheless, sixty-one months after the start of the plan, Appellee-Trustee Ronda Winnecour filed a Motion to Dismiss the case under 11 U.S.C. § 1307(c), alleging that her final calculation showed that Debtors still owed $1,123 to complete their plan base.[1] She noted in her motion that "[s]hould the debtors remit funds sufficient to complete the plan, the Trustee [would] not object to withdrawing her motion to dismiss." Appellant App. Vol. II, 7. Debtors cured the arrears within 16 days of the motion alerting them to the deficit, and the Trustee consequently withdrew the motion.

By that point, however, the Trustee's motion had been joined by Appellant-Creditor Elizabeth Shovlin, who was the successor in interest to a holder of several unsecured claims against Debtors, and Creditor pressed forward, arguing that

---

[1] The record is unclear about the source of this shortfall. The Bankruptcy Court found that it was largely due to an increase in the Trustee's fee during the term of the plan, and not to any missed payments during the plan term. *In re Klaas ("Klaas III")*, 548 B.R. 414, 424 (Bankr. W.D. Pa. 2016).

6

the late payment was invalid because the plan and the Code required all payments to be completed within sixty months.[2] While the Bankruptcy Court agreed that the failure to completely fund the plan base within sixty months was a material default constituting cause for dismissal under 11 U.S.C. § 1307(c), it also found that the default was not the result of an unreasonable delay by Debtors, that Debtors promptly corrected the deficiency, and that the delay did not significantly alter the timing of plan distributions to creditors. The court, therefore, denied the Motion to Dismiss, concluding that "[b]y the time of the hearing on the trustee's motion, the default was no longer material," and that Debtors had "fully funded their plan obligations." *In re Klaas ("Klaas I")*, 533 B.R. 482, 488 (Bankr. W.D. Pa. 2015). Creditor appealed the order denying the motion, and the District Court affirmed. *Shovlin v. Klaas ("Klaas II")*, 539 B.R. 465, 466 (W.D. Pa. 2015).

Creditor also initiated an adversary proceeding by filing a complaint objecting to the discharge of the Klaases' debts. Nearly a year after its decision on the Motion to Dismiss, the Bankruptcy Court, relying on that ruling and the law of the case doctrine, again rejected Creditor's arguments that the failure to complete all payments within the plan term mandated dismissal and granted summary judgment in favor of Debtors. *In re Klaas ("Klaas III")*, 548 B.R. 414, 425 (Bankr. W.D. Pa. 2016). The Bankruptcy Court issued a

---

[2] Creditor also argued that Debtors should be denied a discharge on the basis that they failed to timely complete a required financial management course, *In re Klaas ("Klaas I")*, 533 B.R. 482, 485–86 (Bankr. W.D. Pa. 2015), but she does not raise this issue on appeal.

completion discharge, Bankr. Case 09-29574 Dkt. No. 211,[3] and the District Court again affirmed on appeal, *Shovlin v. Klaas ("Klaas IV")*, 555 B.R. 500, 502 (W.D. Pa. 2016). Creditor then filed a notice of appeal of the adversary case, which was consolidated with the first appeal before our Court.

## II.    Jurisdiction

Although no party in this case contests our jurisdiction, "[w]e have an independent obligation to ascertain our own jurisdiction" before we may reach the merits of the case. *In re Cont'l Airlines, Inc.*, 932 F.2d 282, 285 (3d Cir. 1991). And although the two appeals have been consolidated before us, "[n]either consolidation with a jurisdictionally proper case nor an agreement by the parties can cure a case's jurisdictional infirmities." *Brown v. Francis*, 75 F.3d 860, 866 (3d Cir. 1996). For these reasons, we must verify that we can exercise jurisdiction over each of the consolidated cases independently.

District courts have "jurisdiction to hear appeals … from final judgments, orders, and decrees … of bankruptcy judges," 28 U.S.C. § 158(a), and, in turn we have jurisdiction to hear appeals from "all final decisions, judgments, orders, and decrees entered" by a district court. 28 U.S.C. § 158(d). On appeal, then, "[t]he finality issue must be resolved with respect to the decisions of both the bankruptcy judge and the district court." *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988).

---

[3] The court provided, however, that the discharge is subject to any claims held by Creditor after the outcome of this appeal. Bankr. Case 09-29574 Dkt. No. 216.

Typically, in civil litigation, a decision is only final if it leads to a court's complete disassociation from a case. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1691 (2015). The challenge in this case is that, while the Bankruptcy Court's grant of summary judgment in the adversary case clearly did conclude the court's involvement in the bankruptcy proceeding, its order denying Creditor's Motion to Dismiss did not. Creditor's appeal from the denial of the Motion to Dismiss therefore requires additional analysis to determine if that order, and the District Court's affirmance of that order, should nonetheless be deemed final and, hence, subject to our review.

We start with the premise that "[c]onsiderations unique to bankruptcy appeals have led us to construe the factor of finality somewhat more broadly in this context than under 28 U.S.C. § 1291." *In re White Beauty View, Inc.*, 841 F.2d at 526. Because bankruptcy proceedings are often "protracted and involve numerous parties with different claims," we take a pragmatic approach and examine the practical effect of the court's ruling. *Id.* Simply put, when it comes to analyzing the finality of an order, "[t]he rules are different in

bankruptcy."[4]  *Bullard*, 135 S. Ct. at 1692.  Our Court considers four factors in this analysis: "(1) the impact on the assets of the bankruptcy estate; (2) the need for further fact-finding on remand; (3) the preclusive effect of a decision on the merits; and (4) the interests of judicial economy."  *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511 (3d Cir. 2005).

Here, as to the first factor, we find it relevant that in the course of denying Creditor's Motion to Dismiss, the Bankruptcy Court explicitly reached the legal conclusion that "the Debtors have completed their plan obligations."  *Klaas I*, 533 B.R. at 489.  The practical effect of that conclusion was to certify the case as eligible for a completion discharge, and the Bankruptcy Code directs courts to grant a discharge "as soon as practicable" following this determination.  11 U.S.C. § 1328(a).  This functionally ended the bankruptcy case and thus affected Creditor's claim on the estate.

As to the second and third factors, the parties agreed there were no disputed factual issues (and, hence, no need for further fact-finding) relevant to the availability and propriety

---

[4] In *In re Christian*, for example, we exercised jurisdiction over a district court order affirming a bankruptcy court's denial of a motion to dismiss a Chapter 7 case because without timely appellate review, the entire bankruptcy proceeding would have had to be completed before it could be determined whether the case was properly brought in the first place, and such a resolution would not be "desirable or practical."  804 F.2d 46, 48 (3d Cir. 1986).  *See also In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990); *In re Brown*, 916 F.2d 120, 124 (3d Cir. 1990).

of a grace period for debtors here to cure their arrearage. As a result, the parties' rights and obligations on those issues were settled by the court's decision on the Motion to Dismiss, and both the Bankruptcy Court and District Court gave that decision preclusive effect by applying the law of the case doctrine when adjudicating the adversary claim and concluding that discharge was a foregone conclusion. *See Klaas III*, 548 B.R. at 421; *Klaas IV*, 555 B.R. at 507.

Admittedly, the fourth factor—judicial economy—may have been better served had Creditor waited to appeal until after final judgment was rendered in both the bankruptcy and the adversary proceeding. That would have relieved the District Court of the burden of adjudicating these appeals separately. But now that both appeals are before our Court, this factor too counsels in favor of adjudicating both claims.

In sum, all four of the relevant factors indicate the Bankruptcy Court's order denying the Motion to Dismiss, and consequently the District Court's order affirming that denial, should be deemed final orders. We therefore may exercise jurisdiction over both appeals.

## III.    Standard of Review

In reviewing bankruptcy court decisions on appeal, we "stand in the shoes" of the district court and apply the same standard of review. *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) (en banc). Accordingly, "we review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998).

11

Here, the order granting Debtors summary judgment is subject to plenary review. *Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir. 1993). The other order under review, denying Creditor's Motion to Dismiss, is reviewed for an abuse of discretion, but the bankruptcy court necessarily abuses its discretion when its decision "rests upon … an errant conclusion of law." *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999) (citation omitted). In this case, Creditor argues that the Bankruptcy Court's exercise of discretion to allow a curative payment rather than dismiss the case was premised on an errant legal conclusion—specifically, the conclusion that "the Debtors were entitled to a discharge under section 1328(a) when they did not complete all of their payments within the 60-month term of their Plan," Creditor Reply to Trustee Br., 2, and we exercise plenary review over any conclusions of law that form the basis for an exercise of discretion, *In re SGL Carbon Corp.*, 200 F.3d at 159; *see also In re Mintze*, 434 F.3d 222, 228 (3d Cir. 2006) (holding that before we can determine whether a bankruptcy court abused its discretion, we must determine as a matter of law whether the court "had any discretion to exercise").

In short, despite the different procedural posture of the two orders under review, both turn upon the same narrow and dispositive legal question: whether Debtors may be granted a completion discharge under § 1328(a), despite having completed their plan base funding only after the end of the sixty-month term. The District Court correctly reviewed that question *de novo* when it was presented on each appeal, *see Klaas II*, 539 B.R. at 469; *Klaas IV*, 555 B.R. at 506–07, and we will do the same.

## IV.    <u>Analysis</u>

Creditor argues that because, in her view, the Bankruptcy Code compels courts to dismiss a bankruptcy proceeding whenever a shortfall remains at the conclusion of the five-year term, the Bankruptcy Court here abused its discretion in denying her Motion to Dismiss and erred in granting summary judgment.

It appears this is a recurring problem in bankruptcy cases, for "many situations … may arise in which completion of the monthly plan payments will not result in the payment of the dividends required by the Bankruptcy Code and promised in the plan," such as when "fees are higher than projected, administrative expenses are incurred, … or larger than expected secured claims are filed" after plan confirmation. *In re Estrada*, 322 B.R. 149, 153 (Bankr. E.D. Cal. 2005). While the modification procedure may be used to adjust for some of these changes during the course of the plan, "there will be the occasional case where the plan's insolvency is not apparent until very late in the case," and "despite the trustee's and the debtor's best efforts to avoid the problem, the plan payments may not fund" all dividends and expenses necessary to complete the plan base. *Id.*; *see also In re Escobedo*, 169 B.R. 178 (Bankr. N.D. Ill. 1993). The Code does not expressly provide for this scenario, nor does it appear that the United States Trustee Offices have developed a consistent practice to address it. Oral Argument at 26:56 (No. 15-3341), *available at* http://www.ca3.uscourts.gov/oral-

argument-recordings.[5]  In the absence of an *ex ante* solution, however, we hold that bankruptcy courts retain discretion under the Bankruptcy Code to grant a reasonable grace period for debtors to cure an arrearage, and we also hold that the Bankruptcy Court here did not abuse its discretion in doing so in this case.  We explain the basis for each holding below.

### A.  Discretion under the Bankruptcy Code

We interpret provisions of the Bankruptcy Code using established canons of statutory construction.  *In re Armstrong World Indus.*, 432 F.3d at 512.  We begin with the plain language of the statute, and if its meaning is plain, we "make no further inquiry unless the literal application of the statute will end in a result that conflicts with Congress's intentions." *Id.* (citations omitted).  We also read statutory provisions in context and avoid an interpretation that is incompatible with the rest of the law.  *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

Creditor argues that the plain language of the statute bars any payment after the plan term.  Specifically, as Creditor points out, § 1322 instructs that a court "may not" approve a proposed plan if it schedules payments over a period of more than five years.  11 U.S.C. § 1322(d).

---

[5] We note that the practice of the Trustee in this case, of filing and then withdrawing motions to dismiss after the end of the plan term, appears problematic—tending to produce unnecessary litigation as it did here.  Indeed, even the Trustee acknowledged a better approach would be to conduct an audit and provide notice to the parties by filing a motion for a status conference prior to the end of the plan term.  *Id.* at 37:05.

Likewise, under § 1329, a court "may not" approve a proposed plan modification that would schedule payments to be due more than five years after the first payment under the original plan was due. 11 U.S.C. § 1329(c). And in addition, the court must find the plan is proposed "in good faith" and it is anticipated at the time of confirmation or modification that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a); § 1329(b)(1) (incorporating the requirements of § 1325(a)).

In focusing on these sections of the Code, however, Creditor misapprehends the relevant question, which is not whether bankruptcy courts may confirm a plan or plan modification that proposes a plan term greater than five years. Plainly, it may not. The relevant question here, however, is whether a bankruptcy court may deny a motion to dismiss and/or grant a completion discharge when there remains at the end of that plan term a shortfall that the debtor is willing and able to cure. And the answer to that question is that it may— an answer found in two entirely different sections of the Code, namely, § 1307, which governs the Bankruptcy Court's power to grant a dismissal, and § 1328, which governs its power to issue a completion discharge.

Section 1307, for example, not only has no express restriction on term length, but also provides that upon a material default, the court "may"—not must—dismiss a case

15

for cause. 11 U.S.C. § 1307(c).[6]  That permissive language, *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947), stands in contrast to the "may not" language of §§ 1322 and 1329, which by definition is prohibitive.   11 U.S.C. § 102(4) (defining "may not" as "prohibitive, and not permissive"). Indeed, although no other Court of Appeals has squarely addressed this issue to date, a number of bankruptcy courts have, and the majority have drawn this same distinction between criteria for plan confirmation and criteria for dismissal.[7]  *See, e.g.*, *In re Brown*, 296 B.R. 20, 22 (Bankr. N.D. Cal. 2003) ("[W]hile the court may not confirm a plan which is to run for more than 60 months, nothing in the Code mandates dismissal of a case with a confirmed plan which ends up needing some extra time to complete."); *In re Harter*, 279 B.R. 284, 288 (Bankr. S.D. Cal. 2002) ("[Section] 1322(d) does *not* contain a 'drop dead' provision that mandates dismissal of the case after five years."); *see also* 8 Collier on Bankruptcy (16th Ed.), ¶ 1322.18[2] (footnote

---

[6] As the Bankruptcy Court here assumed Debtors' failure to fund the plan base before the end of the plan period constituted a "material default by the debtor with respect to a term of a confirmed plan," 11 U.S.C. § 1307(c)(6), *Klaas I*, 533 B.R. at 487–88, and Debtors do not challenge this ruling on appeal, we will assume, without deciding, that the $1,123 arrearage at issue constituted a plan default.

[7] The only Court of Appeals to have considered the issue is the Seventh Circuit, which recently assumed, without deciding, that a bankruptcy court had discretion to allow a debtor to cure a default resulting from a failure to make all payments within the five-year plan period.  *Germeraad v. Powers*, 826 F.3d 962, 968 (7th Cir. 2016).

omitted) ("[S]ection 1322(d) … focuses on the payments *provided for* by the plan.  If payments are late, but the debtor is substantially complying with the plan, the court should allow the plan to be completed within a reasonable time after the stated term.").

Likewise, § 1328 directs bankruptcy courts to issue a completion discharge if the debtor has completed "all payments under the plan," 11 U.S.C. § 1328(a), without an express requirement that such payments were made within five years.  While Creditor would read such a requirement into the phrase "under the plan," that reading would be in conflict with the way that phrase is used elsewhere in the Code.  Section 1325(a)(6), for example, requires the Bankruptcy Court at confirmation to verify that the debtor is able "to make all payments under the plan" and also "to comply with the plan."  11 U.S.C. § 1325(a)(6).  Distinguishing between these two requirements would be unnecessary, and the first would be rendered superfluous, if, as Creditor asserts, making "all payments under the plan" requires perfect compliance with each plan term, including

17

the term length.[8]  *See In re Fesq*, 153 F.3d 113, 115 (3d Cir. 1998) ("[A]s a general rule of statutory construction '[w]e strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant.'").

In addition, we have previously interpreted the nearly identical phrase "under a plan confirmed" as used in 11 U.S.C. § 1146(c) to simply mean "made pursuant to the authority conferred by such a plan," *In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d 243, 254 (3d Cir. 2003), and we assume "identical words used in different parts of the same act are intended to have the same meaning," *Sorenson v.*

---

[8] Creditor seeks to engraft principles of contract law onto our statutory interpretation, insisting that payment within sixty months is a necessary condition precedent to discharge and that a failure to fully fund the plan within sixty months is therefore an irreparable breach of the plan.  True, the Klaases' plan contains a clause that prohibits the *Trustee* from extending the plan term beyond sixty months.  But even if this could be read to prohibit the Trustee from accepting the late payment made in this case, we have never held that a Chapter 13 plan creates a contract between a debtor and his creditors governed by common law principles, nor have we held that all of the debtor's rights under the Bankruptcy Code are extinguished upon breach of any particular plan term.  Creditor relies on our holding in *In re Shenango Group, Inc.*, in which we applied contract principles in the bankruptcy context, but we did so there to resolve a dispute about the correct construction of a Chapter 11 reorganization plan, not to interpret the rights of the parties under the Bankruptcy Code itself.  501 F.3d 338, 344 (3d Cir. 2007).  This analogy is therefore unavailing.

*Sec'y of Treasury of U.S.*, 475 U.S. 851, 860 (1986). Consistent with this canon, if the District Court allows a grace period so that the final payment exceeds five years, the payment due is still "pursuant to the authority conferred by [the] plan," *In re Hechinger*, 335 F.3d at 254, so that if the debtor makes that payment, he will have completed all payments "under the plan" and the bankruptcy court "shall grant the debtor a discharge. 11 U.S.C. § 1328(a).[9]

While the text is unambiguous and we need not refer to legislative history, the history of the act here reinforces our conclusion and sheds light on the statute's purpose. *See Sec. & Exch. Comm'n v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 350–51 (1943). The Bankruptcy Reform Act of 1978 amended the former Bankruptcy Act, which the Reform Act described as "overly stringent and formalized," in order to make wage earner plans more flexible and to encourage the use of debt repayment plans rather than liquidation. H.R. Rep. No. 95-595, at 117 (1977). The House Judiciary Committee Report for the Reform Act also lamented that wage payment plans had become "a way of life for certain debtors" and that extensions on plans for seven to ten years had "become the closest thing there is to indentured servitude;

---

[9] For the avoidance of all doubt, we are not holding that a debtor has an absolute right under the Bankruptcy Code to cure an arrearage after the five-year limit has passed and thus obtain a completion discharge. Rather, we interpret the statute to grant bankruptcy courts discretion to deny dismissal and allow a grace period, so that if such payment is made within that grace period, the debtor will then have completed "all payments under the plan" and only then would be statutorily entitled to a discharge. 11 U.S.C. § 1328(a).

19

it lasts for an indentifiable [sic] period, and does not provide the relief and fresh start for the debtor that is the essence of modern bankruptcy law." *Id.* In response to Congress's evident concern about debtors being forced to remain in repayment plans indefinitely, the Act capped the plan term at five years, an amendment the District Court here aptly described as intended to provide "a shield" for debtors rather than "a sword" for creditors. *Klaas IV*, 555 B.R. at 513. Interpreting §§ 1307 and 1328 to mandate dismissal and preclude a completion discharge thus would be contrary not only to the language of the Bankruptcy Code but also to the purpose of the five-year cap.

In view of the statutory language and purpose, we find Creditor's remaining two objections unpersuasive. First, Creditor points out that 11 U.S.C. § 1329(c) prohibits courts from approving a plan modification that would provide for payments beyond five years. Creditor contends that the bankruptcy court may not grant forgiveness where it could not otherwise grant permission, and that allowing debtors to make a plan payment after five years would constitute an informal modification of the plan beyond the five years permitted by § 1329(c). Debtors in this situation, however, are not seeking to modify their commitments and create a new plan, but instead to complete the payments owed under their confirmed plan. We therefore agree with the Seventh Circuit's observation, albeit dictum, that allowing such curative payments would not modify the plan because the payments at issue "would not be payments 'provide[d] for' by [a] modified plan; rather, they would be payments made to cure a default … *i.e.*, payments made because the debtors did not make the payments 'provide[d] for' by the plan in the first place." *Germeraad v. Powers*, 826 F.3d 962, 968 (7th Cir.

20

2016). Moreover, as the Bankruptcy Court noted, given that debtors who default early in the case can cure the default without requesting formal modification, denying that opportunity to debtors after a lengthy track record of good faith payments would "impose a standard of perfection at the conclusion of the plan term that does not exist at any other point in the case." *Klaas I*, 533 B.R. at 487.

Second, Creditor asserts that a hardship discharge, pursuant to 11 U.S.C. § 1328(b), is the exclusive remedy for a debtor who fails to make all payments within the five-year plan period, foreclosing a completion discharge by way of a late curative payment. Section 1328(b) gives a bankruptcy court discretion to grant a hardship discharge when a debtor fails to complete all payments under the plan "due to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1328(b). That section, however, provides a stop-gap for debtors who tried in good faith to complete all payments and find themselves at the end of the plan term unable to do so. That bankruptcy courts may grant a partial discharge in that situation has no bearing on whether they may decline to dismiss the bankruptcy proceeding and may grant a completion discharge for debtors who *are* able and willing at the end of their plan term to complete their plan funding.

Creditor's argument would also produce absurd results. Where, as here, debtors substantially complied with the Plan and acted in good faith to make a prompt payment as soon as they were notified of an arrearage, it would hardly make sense to deny them the benefit of Chapter 13 bankruptcy by dismissing the entire proceeding. Nor would it make sense to require such debtors to seek a hardship discharge, i.e., to withhold the remainder of the plan funding

21

that they have at their disposal and deprive creditors of those distributions simply because the payment is late. On the contrary, that would contravene the Code's goal of "provid[ing] for the efficient and equitable distribution of an insolvent debtor's remaining assets to its creditors," *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 251 (3d Cir. 2001), and we decline to interpret § 1328 in such a manner, *see United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1940) (instructing courts to construe the language of statutes to avoid results that are "absurd" or "at variance with the policy of the legislation as a whole").

B.     The Bankruptcy Court's Exercise of Discretion

Having concluded that bankruptcy courts have discretion to allow a grace period for a late curative payment and thus to deny dismissal and issue a completion discharge, we turn to the question whether the Bankruptcy Court here exercised that discretion properly. Before we can make that determination, however, we must first identify what factors should inform the exercise of that discretion.

While none of our sister Circuits have yet examined this threshold question, the bankruptcy courts that have addressed this question consistently rely on *In re Brown*, which identified four factors as relevant: "[(1)] How much longer is it going to take to complete the plan?[; (2)] Has the debtor been diligently making plan payments?[; (3)] How much time has elapsed since confirmation before dismissal is sought?[; and (4)] If the plan cannot be completed on time

due to a large prepetition claim, was the debtor culpable in failing to properly schedule the claim?" 296 B.R. at 22.[10]

We agree that *In re Brown* offers a helpful starting point, but it does not account for certain additional factors we deem relevant, such as the materiality of the default or whether allowing a cure would prejudice any creditors—two considerations that the Code expressly identifies as relevant to a motion to dismiss. *See* 11 U.S.C. § 1307(c). In addition, we draw helpful guidance from our case law concerning the circumstances in which a district court, in the exercise of its discretion, may set aside a default judgment. In that context, we also have instructed district courts to consider any prejudice the plaintiff will suffer if the default is lifted, as well as the defaulting defendant's ability to present a meritorious defense, the excusability or culpability of the

---

[10] *See, e.g.*, *In re Henry*, 368 B.R. 696, 701–02 (N.D. Ill. 2007) (affirming a bankruptcy court's application of the *In re Brown* factors and its exercise of discretion to allow a cure); *In re Hill*, 374 B.R. 745, 749–50 (Bankr. S.D. Cal. 2007) (allowing a cure based on the debtors' history of consistent payments and lack of culpability); *cf. In re Black*, 78 B.R. 840, 843 (Bankr. S.D. Ohio 1987) (noting that a cure was appropriate because creditors would receive a sufficient dividend). Bankruptcy treatises likewise cite *In re Brown*, *see, e.g.*, Hon. W. Homer Drake, Jr., et al., *Chapter 13 Practice & Procedure*, § 4:9 Maximum Duration of Plan (2d ed. 2016); Francis C. Amendola, et al., 8A C.J.S. Bankruptcy § 152 What Constitutes Cause (2017), or advise that a cure should be permitted if the debtor is "substantially complying with the plan," 8 Collier on Bankruptcy (16th Ed.), ¶ 1322.18[2].

defendant's conduct, and the effectiveness of applying alternative sanctions. *See Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987).

Building on *In re Brown*, and taking into account considerations relevant to § 1307(c) and the analogous default judgment context, we conclude the non-exhaustive list of factors a bankruptcy court should consider in deciding whether to allow a grace period include: (1) whether the debtor substantially complied with the plan, including the debtor's diligence in making prior payments; (2) the feasibility of completing the plan if permitted, including the length of time needed and amount of arrearage due; (3) whether allowing a cure would prejudice any creditors; (4) whether the debtor's conduct is excusable or culpable, taking into account the cause of the shortfall and the timeliness of notice to the debtor; and (5) the availability and relative equities of other remedies, including conversion and hardship discharge.

Applying these factors, we have no trouble concluding that the Bankruptcy Court here properly exercised its discretion. First, the Bankruptcy Court found that Debtors had diligently and timely made each of the sixty monthly payments called for in their plan, had promptly augmented their payments when the mortgage payment increased mid-term, and had not violated any other plan terms. *Klaas I*, 533 B.R. at 484–85, 488–89; *Klaas III*, 548 B.R. at 417.

Second, the Bankruptcy Court found that a cure was feasible: the arrearage was small relative to the plan base; Debtors were financially able and willing to cure; and Debtors did so promptly once notified, making payment even

24

before the hearing on the motion. *Klaas I*, 533 B.R. at 488–89.

Third, crucial to the Bankruptcy Court's conclusion and ours today, that court found the tardiness of the curative payment did not adversely affect any creditor. *Klaas III*, 548 B.R. at 425. On the contrary, it completed the plan base and enhanced the funds available for distribution. Even Creditor does not contend that her rights under the plan were prejudiced.

Fourth, the Bankruptcy Court found that the shortfall was not the result of an unreasonable or culpable delay by Debtors, and the only cause for the arrearage identified in the record or by the parties at argument was the Trustee's own fee increase that the Trustee did not call to Debtors' attention until after the end of the plan term. *Id.* at 424. Creditor has not suggested that Debtors had knowledge of the arrearage before that point, and the record indicates that the reason they did not was the approach taken by the Trustee of filing a Motion to Dismiss in the sixty-first month and withdrawing it instead of, e.g., conducting an audit and giving notice to Debtors before the plan term had ended. Had Debtors received such notice, their prior conduct in diligently making all payments, including the interim increase, indicates they likely would have completed the plan base before sixty months if given the opportunity.

Finally, conversion and hardship discharge would be nonsensical in this situation, and modification was no longer permitted. Considering the consequences to Creditor of allowing a cure and the consequences to Debtors of disallowing it in these circumstances, the equities weigh in

favor of Debtors, and the Bankruptcy Court reasonably concluded that allowing a cure would further the goals of the Bankruptcy Code and the plan.

Under these circumstances, the Bankruptcy Court was well within its discretion to decline to dismiss and to grant summary judgment and a discharge to Debtors.

## V. <u>Conclusion</u>

For the foregoing reasons, we will affirm the order and judgment of the District Court, and by extension the Bankruptcy Court.