NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JOSEPH EDWARD JAMES, JR.,<br>　　　　　　　Debtor. | BAP No. AZ-20-1260-FBS<br><br>Bk. No. 2:20-bk-09466-MCW |
| JOSEPH EDWARD JAMES, JR.,<br>　　　　　　Appellant,<br>v.<br>EDWARD JOHN MANEY, Chapter 13<br>Trustee; FEARLESS MS HOLDINGS,<br>LLC; KEVIN J. KENDALL,<br>　　　　　　Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Madeleine Carmel Wanslee, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Debtor Joseph Edward James, Jr. appeals from the bankruptcy court's

order granting chapter 13[1] trustee Edward John Maney's ("Trustee")

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal

motion to dismiss. Creditors Fearless MS Holdings, LLC ("Fearless") and Kevin J. Kendall joined in the motion. The bankruptcy court determined that dismissal was warranted due to Mr. James' failure to propose a feasible plan, make plan payments, and file his tax returns.

Mr. James does not identify any reversible error. We AFFIRM. We also DENY Fearless' and Mr. Kendall's request for fees and costs.

## FACTS[2]

### A.    Mr. James' chapter 13 bankruptcy case

On August 18, 2020, Mr. James, proceeding pro se, filed a chapter 13 petition. His § 341(a) meeting of creditors was scheduled for October 7.

Mr. James' schedules were largely incomplete. He scheduled secured claims totaling $364,000 and various unsecured claims, but he did not assign amounts to those claims. He also stated that he was employed at an automobile dealership and scheduled monthly income of $3,200. He calculated his monthly net income at $348.

Mr. James' proposed chapter 13 plan was similarly deficient. For example, the plan stated that payments would begin on October 1 but did not say how much each payment would be or how long they would last, and the plan did not provide for cure of Mr. James' mortgage arrearage.

---

Rules of Bankruptcy Procedure.

[2] We exercise our discretion to review the bankruptcy court's docket in this case, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

The plan stated that Mr. James had not filed tax returns between 2015 and 2019. It also left blank the calculation of monthly payments and the § 1325 analysis. Finally, it listed Fearless as holding a domestic support obligation of an unknown amount.

A number of creditors filed proofs of claim, including Fearless and Mr. Kendall.[3] Additionally, multiple creditors objected to the plan.

**B.    The Trustee's motion to dismiss**

The Trustee filed a motion to dismiss ("Motion to Dismiss") Mr. James' case. He argued that dismissal for cause was appropriate under § 1307(c)(1) because Mr. James could not demonstrate with reasonable certainty that there was a reasonable prospect of confirming a plan: the proposed plan did not provide for any payments to the Trustee, did not propose to cure the mortgage default, and did not provide a realistic source of funding. Also, Mr. James' net monthly income of $348 was not sufficient to provide for secured and priority claims exceeding $53,000.

The Trustee also contended that, under § 1307(e), dismissal was appropriate due to Mr. James' failure to file his prepetition tax returns. He asserted that, based on the Arizona Department of Revenue's proof of claim, Mr. James had not filed his state income tax returns and transaction

---

[3] The record does not clearly explain the background of these claims, but it appears that Mr. James sued Fearless and Mr. Kendall in state court, and the defendants counter-sued. The jury found in favor of Fearless and Mr. Kendall on certain claims and counterclaims. Mr. James objected to the proofs of claim, arguing that the jury verdict did not result in a damages award and that the parties are still litigating the matter.

privilege tax returns for multiple years between 2010 and 2020.

Finally, the Trustee argued that the best interests of the creditors were served by dismissal, because allowing the case to proceed would cause delay that would prejudice the creditors.

Mr. James opposed the Motion to Dismiss and filed amended Schedules I and J and an amended plan. Without explanation, he increased his monthly income from $3,200 to $4,100, which increased his net income to $910. The amended plan provided that payments would begin on November 1 and that he would pay $948 per month for fifty-seven months.

Fearless and Mr. Kendall filed a joinder ("Joinder") to the Motion to Dismiss. They argued that Mr. James had failed to file his tax returns by the deadline imposed by § 1308(a). They contended that the amended plan failed to cure the original plan's deficiencies. They said that Mr. James' sudden increase in monthly income was suspect and that he was actually operating an automobile sales business that he failed to disclose.

In response, Mr. James stated that there was no determination that he owes any tax debt or even that he was required to file tax returns. He also argued that Mr. Kendall and Fearless are not "creditors," as they are still prosecuting a state court lawsuit.

At the hearing on the Motion to Dismiss, Mr. James represented that he recently made two mortgage payments to the mortgagee and was current on his mortgage payments (although he conceded that he had been in default on the petition date). He acknowledged that he had not made

4

any plan payments to the Trustee. He asserted that he could make the monthly payments and accused counsel for the Trustee, Fearless, and Mr. Kendall of lying and making "fraud claims."

The bankruptcy court told Mr. James that he should have been making plan payments to the Trustee, even if the plan was not yet confirmed. It stated that it would dismiss the case for cause under §§ 1307(c) and (e):

> [O]n the record here today where there has been a failure to make payments, when there was mortgage arrears when the case was filed, when there are errors in your schedules and statements, when it appears that you do not have enough money to make the payments that are required to pay your creditors, and where you don't have tax returns for this lengthy period of time, it's a problem because you have to prepare and provide the Trustee with those tax returns, just in order to be in bankruptcy.

At this point, Mr. James orally offered that he had over $600,000 of equity in vehicles. The court was troubled by the fact that Mr. James did not disclose ownership of those vehicles in his schedules, but it stated that it was not the basis for its decision on the Motion to Dismiss.

The bankruptcy court entered an order ("Dismissal Order") dismissing the case. Mr. James timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in dismissing Mr. James' chapter 13 case.

## STANDARD OF REVIEW

We review a bankruptcy court's dismissal of a chapter 13 case for an abuse of discretion. *See Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011). Under the abuse of discretion standard, we reverse where the bankruptcy court applied the wrong legal standard, it misapplied the correct legal standard, or its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

### A. The bankruptcy court did not abuse its discretion in dismissing Mr. James' case under §§ 1307(c) and (e).

The bankruptcy court held that dismissal was appropriate because Mr. James failed to make plan payments, propose a feasible plan, and file tax returns. Mr. James does not address any of these grounds. We discern no error.

First, the bankruptcy court held that dismissal was appropriate under § 1307(c). Section 1307(c) allows the bankruptcy court to dismiss a case "for cause." *Schlegel v. Billingslea (In re Schlegel)*, 526 B.R. 333, 339 (9th Cir. BAP 2015). That section provides a nonexclusive list of circumstances that can

amount to cause.

"Dismissal under § 1307(c) is a two-step process. Once the court has determined that cause to dismiss exists, it still must decide what remedial action — what form of dismissal — should be taken." *In re Ellsworth*, 455 B.R. at 922; *see Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006) ("[O]nce a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'").

Subsection (c)(1) allows for dismissal where the debtor causes delay that unduly prejudices his creditors. *See In re Ellsworth*, 455 B.R. at 915 ("A debtor's unjustified failure to expeditiously accomplish any task required either to propose or to confirm a chapter 13 plan may constitute cause for dismissal under § 1307(c)(1)."). The bankruptcy court ruled that Mr. James proposed an unconfirmable plan, there were too many discrepancies in the information in his schedules, statements, and plan, and his income was insufficient to support adequate plan payments. Mr. James does not address any of these points. We agree that his failure to provide accurate information and propose a confirmable plan caused unreasonable and prejudicial delay.[4]

---

[4] At oral argument, Mr. James insisted that his plan was feasible because he had equity in cars that were the subject of a lawsuit. Even though he did not disclose his interest in the cars, he claims that his disclosure of the lawsuit was sufficient and that he did not need to disclose his interest in the cars because he did not then have possession of them. We disagree. He indicated in his Schedule A/B that he did not have any legal

7

Under subsection (c)(4), dismissal is appropriate where the debtor fails to commence plan payments "not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier . . . ." § 1326(a)(1). There is no dispute that Mr. James did not comply with this requirement. He filed his petition on August 18 (and his plan on September 11) but admitted at the hearing on November 19 that he had not made any payments to the Trustee. His excuse for failing to commence plan payments because the court had not yet approved a plan is unavailing; under § 1326(a)(1), the debtor must begin making plan payments well before a plan could be confirmed.

Most importantly, the standard under § 1307(c) is "cause," and the subsections are a nonexclusive list of circumstances that can amount to cause. *In re Henson*, 289 B.R. 741, 750-51 (Bankr. N.D. Cal. 2003) ("[T]he list set forth at § 1307(c)(1)-(10) is a non-exclusive one that does not define the term 'cause' but merely illustrates examples of it."). The record amply supports the bankruptcy court's determination that cause existed based on Mr. James' failure to do the basic things that a chapter 13 debtor must do promptly: make complete and candid disclosures; file a comprehensible and confirmable plan; and timely begin plan payments.

Second, the bankruptcy court dismissed the case under § 1307(e) for

---

or equitable interest in motor vehicles, and his disclosure of the lawsuit only stated, "current lawsuit car property / Walmart lawsuit" with a value "to be determined." This is insufficient to disclose the alleged interests and does not support the plan's feasibility.

failure to file his tax returns for many years. Section 1307(e) provides:

> (e) Upon the failure of the debtor to file a tax return under section 1308, . . . the court shall dismiss a case or convert a case under this chapter to a case under chapter 7 of this title, whichever is in the best interest of the creditors and the estate.

§ 1307(e). Section 1308 requires that:

> Not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a), if the debtor was required to file a tax return under applicable nonbankruptcy law, the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition.

§ 1308(a).

There is no dispute that Mr. James failed to file his tax returns before the meeting of creditors. He admitted in his plan that he had not filed tax returns between 2015 and 2019, and the Arizona Department of Revenue's proof of claim stated that he had not filed required personal income tax returns between 2010 and 2019.

For the second step of its analyses, the bankruptcy court had to decide whether dismissal or conversion was in the best interests of the creditors and the estate. The Motion to Dismiss requested such a determination, and Mr. James requested conversion to chapter 7 in the title of his response to the Joinder. Although the court did not explicitly make this determination, the record easily supports its implicit ruling that dismissal was in the best interest of the creditors and that allowing the case

to continue would prejudice creditors. It was not an abuse of discretion to dismiss the case.

**B.    Mr. James' arguments on appeal are meritless.**

Mr. James does not challenge any of the bankruptcy court's reasons for dismissing his case. Rather, he raises three points that are devoid of any supporting citations and are irrelevant to the Dismissal Order. We discern no error.

First, Mr. James states that the court erred because he was "not . . . allowed the meeting of creditors 341 meeting." Even if this is true, it has no bearing on the Dismissal Order. The meeting of creditors allows the case trustee and creditors an opportunity to gather information by questioning the debtor under oath as to his petition, assets, and liabilities. Mr. James seems to think that, at the meeting of creditors, the Trustee had some obligation to explain the bankruptcy process or allow him the opportunity to explain his plan or rebut certain creditors' claims. He is mistaken; the meeting of creditors does not confer any rights on the debtor that would prevent dismissal of his case.

Moreover, the record indicates that the Trustee convened a meeting of creditors on October 7, 2020 and continued it twice. The appellees represented that Mr. James testified at the October 7 meeting of creditors, and Mr. James appeared to acknowledge as much at oral argument.

Second, Mr. James argues that counsel for Fearless and Mr. Kendall submitted incomplete or false supporting documents and "poisoned" the

Trustee's counsel. He similarly argues that counsel for the Trustee made false allegations and abused her power. But the court did not base its decision to dismiss the case on any information Fearless and Mr. Kendall submitted in support of their proofs of claim. Similarly, the bankruptcy court explicitly stated that it was not considering the issue of Mr. James' supposed equity in vehicles or his operation of an automobile sales business. The bankruptcy court based its decision to dismiss the case on the specific grounds discussed above; Mr. James does not address any of those grounds on appeal.

Mr. James also does not identify which of the Trustee's statements he thinks were false. Mr. James offers only a vague assertion of falsity and abuse of power, so we do not find any reversible error. *See Pierce v. Multnomah Cnty.*, 76 F.3d 1032, 1037 n.3 (9th Cir. 1996) (issues not supported by argument in pro se brief are deemed abandoned); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

Third, Mr. James argues baldly that the court abused its power. Again, he does not explain his assertion. The bankruptcy court unquestionably has power to dismiss a chapter 13 case in circumstances like these. We reject his argument.

## C.  We deny Fearless' and Mr. Kendall's request for fees and costs.

Fearless and Mr. Kendall request attorneys' fees and costs on appeal because this appeal is "wholly without merit." We deny their request.

Rule 8020 allows a prevailing appellee to recover fees and costs for a frivolous appeal but requires that the moving party make the request in a "separately filed motion." Rule 8020(a) ("If the . . . BAP determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."). Fearless and Mr. Kendall did not file a separate motion for fees and costs and acknowledge that their request is "pursuant to a separate application that will be filed subsequently, if allowed." They have not filed such an application, so their request is procedurally improper. *See Marino v. Classic Auto Refinishing, Inc. (In re Marino)*, 234 B.R. 767, 770 (9th Cir. BAP 1999).

## CONCLUSION

The bankruptcy court did not abuse its discretion in dismissing the chapter 13 case. We AFFIRM.